THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE SAUNDERS *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—87—2770, 1—87—2773 cons.

Opinion filed December 6, 1990.—Rehearing denied January 7, 1991.

Randolph N. Stone, Public Defender, of Chicago (Evelyn G. Baniewica and Karen A. Popek, Assistant Public Defenders, of counsel), for appellant Wayne Saunders.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant Alfred Taylor.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Bonnie Meyer Sloan and Mary Colleen Roberts, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendants Wayne Saunders and Alfred Taylor were found guilty of possession of a controlled substance. Saunders was sentenced to six years' imprisonment. Taylor was sentenced to 10 years' imprisonment to run concurrently with a six-year term he received after pleading guilty to Federal narcotics charges. After both defendants filed separate appeals, we granted the State's motion to consolidate. Defendants contend that they were not proved guilty beyond a reasonable doubt. In addition, Saunders argues that his conviction should be reduced from a Class X felony to a Class 1 felony because the evidence was insufficient to prove that the illicit amount he knowingly possessed was at least 30 grams.

At trial, police officer Terrance O'Connor testified that about 9:30 p.m. on April 29, 1986, he and his partner, Officer Frank Goff, were in a store parking lot at Division Street and Austin Boulevard in Chicago. The officers were working as part of an undercover team, along with surveillance officers Abreu and Paselovich. Officer O'Connor was carrying $8,500 because he planned on purchasing five ounces of cocaine pursuant to an arrangement he had made with Timothy Shackleford. The officer had purchased a large quantity of cocaine from Shackleford just a few days earlier on April 22. O'Connor testified that when he met Shackleford in the parking lot, Shackleford told the officer to meet him at a nearby restaurant at 5640 North Avenue because "the man with the cane" had seen police at Division and Austin and "didn't want to do the deal there." A police report of the incident provided that Shackleford told O'Connor that "his guys would be there shortly and that they would have the dope with them."

As the officers drove to the restaurant, they radioed the surveillance officers to tell them of the change in their location. After parking the car in the restaurant's parking lot, O'Connor exited the car and stood on the passenger side next to Officer Goff, who remained seated in the car. Shackleford walked over to the officers' car and spoke to O'Connor for about 30 minutes, at which point O'Connor observed defendants arrive in a black Chrysler Cordoba. The car, driven by Taylor, parked next to the officer's car. O'Connor testified that he told Shackleford that he was not going to pay until he saw the cocaine. Shackleford told the officer to talk to Saunders and then proceeded to walk around the parking lot. A police report provided that when the officer told Shackleford that he wanted to see the cocaine, Shackleford said that he understood and that O'Connor should go over to the car and talk to the men. O'Connor testified that Saunders told him that the "ounces were going to cost $8,500," and that

O'Connor would be happy with the quality of the cocaine. When the officer told Saunders that he wanted to "check out the product," Saunders told Taylor to show the officer "an ounce." Taylor then reached into his shirt pocket and pulled out a clear plastic bag containing a white substance which O'Connor believed to be an ounce of cocaine. On cross-examination, O'Connor testified that the actual amount recovered was two ounces and that $8,500 would buy a lot more than several ounces of cocaine. On redirect examination, O'Connor stated that the two ounces that were subsequently recovered from Taylor by the surveillance officers were in two separate bags.

At this point in the transaction, Shackleford returned and said that there were police in the area and that he would call Officer O'Connor later. Defendants drove away. Officer Goff then radioed to the surveillance officers that defendants had cocaine, that the driver, Taylor, had it in his shirt pocket and directed the officers to stop defendant's car. Officer O'Connor then returned to the driver's seat of his car and watched surveillance officers Abreu and Paselovich stop defendants' car seconds later. Defendants never left Officer O'Connor's sight from the time they left the parking lot to the time the surveillance officers stopped their car. Officer O'Connor also testified that he had seen defendants during a previous delivery of cocaine.

During redirect examination, Officer O'Connor testified that he had a prior encounter with Shackleford and defendants involving a purchase of cocaine and that defendants were in the same black Cordoba. Describing that transaction, Officer O'Connor stated that Shackleford had a conversation with defendants, and then returned to the officer and sold him a large quantity of cocaine. It was the officer's belief that Shackleford did not have the cocaine on his person before he went over to defendants.

Officer Abreu testified that he stopped the car in which defendants were riding and ordered them out of the car. He stated that he recovered a plastic bag containing cocaine from a breast pocket of a shirt Taylor was wearing. On redirect examination, the officer acknowledged that a police report concerning defendants' arrests stated that two clear plastic bags were recovered from Taylor.

The parties stipulated that the property recovered from Taylor consisted of two clear plastic bags, that both bags were tested and that the substance in the bags was cocaine and weighed a total of 53.19 grams.

In finding defendants guilty, the trial court stated:

> "The defense points to certain discrepancies in the report, a discrepancy which they label as major deal where there was

one packet or two packets and other assertions dealing with the credibility of the officers that are involved here. Suffice it to say as far as the Court is concerned this is not a question that involves the credibility of police reports, of supplementary vice case reports and what have you. Yes, there are some discrepancies. There are some things that are inconsistent, but the clear and uncontradicted fabric of the case on the date in question, Mr. Taylor was driving the vehicle that came into the White Castle parking lot, that he was observed by Detective O'Connor with at least one packet. This was taken out of his shirt pocket, that it appeared to Detective O'Connor to be contraband, cocaine and that observation was corroborated a short time later by Detective Abreu who recovered the cocaine from Mr. Taylor.

The question then arises as to the part of Mr. Saunders. In what the court has reviewed, there was testimony from Detective O'Connor which recites narcotics between Detective O'Connor and Mr. Saunders, that a price was quoted, contraband was removed and exhibited to Detective O'Connor at the request and direction of Mr. Saunders, and it is apparent from that evidence that there was an aiding and abetting by Mr. Saunders in the enterprise that Mr. Taylor was engaged in. The Court finds from this evidence that the State has proved the charges here beyond a reasonable doubt."

■■ ■ Defendant Taylor contends that he was not proved guilty beyond a reasonable doubt. In addressing this issue, we are bound by the standard of review which provides that a criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) Applying this standard of review to the instant case, we find that the evidence was sufficient to sustain Taylor's conviction. Officer O'Connor's testimony established that Taylor and Saunders met with the officer. Taylor drove to the site of the meeting and sat behind the wheel while Saunders talked to the officer. When the officer indicated that he wanted to see the cocaine, Taylor reached into his shirt pocket, pulled out a bag containing cocaine and held the bag out in front of Saun-

ders' chest so that the officer could inspect it. When Shackleford informed the group that police were in the area, Taylor drove out of the parking lot. Moments later he was stopped by Officer Abreu. A pat down search of Taylor produced two bags of cocaine from his shirt pocket which was subsequently determined to be 53.19 grams of cocaine. Taylor correctly cites discrepancies in the testimony concerning the number of bags of cocaine recovered from him. Taylor refers to Officer O'Connor's direct testimony that Taylor held out an ounce bag of cocaine and his subsequent testimony during cross-examination that he saw one bag containing two ounces of cocaine at the police station following Taylor's arrest. In another reference to the record, Taylor points out that on redirect examination, Officer O'Connor stated that he saw two ounces of cocaine at the station in two separate bags. Taylor also refers to Officer Abreu's direct testimony that he recovered "a" bag of cocaine from Taylor, and his testimony on cross-examination that he recorded in his police report the recovery of two bags. The trial court noted these discrepancies in the testimony and determined that they did not undermine "the clear and uncontradicted fabric of the case." Any discrepancies or conflicts in the testimony affect only the weight to be accorded the testimony, and the determination of credibility of the witnesses, the weight to be accorded their testimony, and the inferences to be drawn therefrom are matters entirely within the province of the trier of fact. (*People v. Lighthall* (1988), 175 Ill. App. 3d 700, 708, 530 N.E.2d 81.) We are also unpersuaded by Taylor's reference to the fact that when Officer O'Connor was asked to identify defendants in court, he merely pointed at both men and did not identify them individually by name or by their role in the transaction. Likewise, the fact that Officer O'Connor testified that he had $8,500 with him for the purpose of purchasing five ounces of cocaine and that only 53.19 grams were recovered from Taylor does not persuade us to reverse his conviction. After reviewing the evidence in a light most favorable to the prosecution, we find that the evidence is not so improbable or unsatisfactory that it creates a reasonable doubt of Taylor's guilt.

Defendant Saunders argues that he was not proved guilty beyond a reasonable doubt because the State failed to prove that he had actual or constructive possession of the cocaine. He also argues that the trial court's finding of guilty on an accountability theory is not supported by the evidence, and that accountability as a basis for culpability is incompatible with the offense of possession. Saunders reasons that the offense of possession, with respect to Taylor, was complete without any action on his part. The State argues that Saunders' chal-

lenge to the application of the theory of accountability to his case is meritless because it is based on the offense of possession and defendant was actually charged with and convicted of the wholly different offense of possession with intent to deliver.

■ Under the theory of accountability, the State has the burden of proving that the defendant solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense; that the participation by the defendant took place either before or during the commission of the offense; and that it must have been with the concurrent, specific intent to facilitate or promote the commission of the offense. (*People v. Totah* (1989), 192 Ill. App. 3d 239, 250, 548 N.E.2d 678.) Although defendant's mere presence at the crime scene and knowledge of an ongoing offense are not, alone, sufficient to establish accountability, the fact finder may infer defendant's accountability from his approving presence at the scene of the crime, and from evidence of conduct showing a design on defendant's part to aid in the offense. (*People v. Tinoco* (1989), 185 Ill. App. 3d 816, 823, 541 N.E.2d 1198.) It is not necessary, however, to prove that the defendant participated in the commission of the act which constituted the offense. (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 570, 458 N.E.2d 544.) Evidence of conduct showing a design on the part of the defendant to aid in a crime renders the defendant accountable for the perpetrator's actions. *People v. Schlig*, 120 Ill. App. 3d at 570.

■ The record in the instant case establishes that Saunders was more than merely present at the crime scene and that specific conduct on his part constituted a design to aid in the offense. The evidence indicated that after the officers arrived at the restaurant and Officer O'Connor told Shackleford that he was not going to pay until he saw the cocaine, Shackleford told the officer to talk to Saunders. We note here the fact that the police report stated that Shackleford told Officer O'Connor to talk to "the men." In any event, defendants arrived and Officer O'Connor talked to Saunders, who told the officer that the "ounces" cost $8,500. According to a police report of the incident, Saunders also told the officer that he would be happy with the quantity of cocaine. When the officer told Saunders that he wanted to "check out the product," Saunders told Taylor to show the officer "an ounce." We find this case to be more similar to *People v. Sauer* (1988), 177 Ill. App. 3d 870, 532 N.E.2d 946, where the court upheld the defendant's conviction for the delivery of cocaine on an accountability theory because the defendant acted as a lookout in one transaction and transported the cocaine to the sale site in other transactions,

than it is to *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631, where the evidence showed only that the defendant was present and may have known about the transaction, and where the co-defendant's reference to another "guy" was too vague to implicate the defendant. Saunders' conduct in driving with Taylor to the site of the crime, speaking to Officer O'Connor about the price and quantity of the cocaine and requesting Taylor to show the officer an ounce established that he aided Taylor in the commission of the offense during its commission with the concurrent, specific intent to facilitate or promote the commission of the offense.

■ We next consider Saunder's claim that his conviction should be reduced to a Class 1 felony because the evidence was insufficient to prove that the amount he knowingly possessed was at least 30 grams. He reasons that since only one packet was shown to the officer in his presence and, claiming that he only had knowledge of one packet, he could only have knowingly possessed one packet. He argues that since the stipulation failed to prove that either of the packets contained at least 30 grams, he was not shown to have possessed that amount. Defendant cites *People v. Lawrence* (1977), 46 Ill. App. 3d 305, 360 N.E.2d 990, to support his claim. In that case a police officer saw the defendant sitting on an air conditioning outlet holding a plastic bag containing marijuana. When the defendant saw the officer, he threw the bag into a nearby alley and ran away. A bag similar to the one viewed by the officer was found in the same location as where the bag had been thrown. Two other bags were found on top of the air conditioning duct. The court concluded that there was sufficient evidence that the defendant possessed the one bag of marijuana, but insufficient evidence that the other two bags were in his actual, immediate, exclusive possession or control.

We disagree with Saunders' argument and do not find *Lawrence* applicable to the instant case, where Saunders has been convicted of possession with intent to deliver on an accountability theory. As stated in *People v. Schlig* (120 Ill. App. 3d at 570):

"A person may aid or abet without actually participating in the overt act or acts, and evidence that the accused attached herself to a group bent on illegal acts with knowledge of its design supports the inference that she shared the common illegal purpose and will sustain her conviction as a principal for a crime committed by another in furtherance of the venture."

As previously determined, the evidence presented at trial revealed conduct on Saunders' part that demonstrated that he shared a common illegal purpose with Taylor and made affirmative acts to promote

the sale of cocaine to Officer O'Connor. (See *People v. Lee* (1987), 162 Ill. App. 3d 972, 516 N.E.2d 360 (defendant convicted of possession and delivery of over 30 grams of cocaine where codefendant, in defendant's presence, made initial delivery of 28 grams, defendant left and later returned with 12 more grams).) We add that the fact that Saunders quoted a price of $8,500 to Officer O'Connor and told Taylor to show the officer "an ounce," rather than "the" ounce, also suggests Saunders' knowledge of more cocaine than the one packet Taylor showed the officer. In any event, we find that Saunders' participation in the transaction rendered him legally accountable for Taylor's conduct even though Saunders himself did not have actual, immediate, exclusive possession or control over the 53.19 grams of cocaine ultimately recovered from Taylor. In *People v. Baxter* (1966), 74 Ill. App. 2d 437, 221 N.E.2d 16 (reversed and remanded because of erroneous admission of defendant's prior narcotics transactions), the court stated that there was sufficient evidence to sustain defendant's conviction even though he had no physical contact with the narcotics or the money and where his codefendant carried out the actual delivery of the narcotics and the receipt of money. The court stated, "[w]hile the particular capacity in which defendant participated in the sale transaction may not have been fixed with certainty, this is not a critical weakness as long as the unlawful participation is proved." (*People v. Baxter*, 74 Ill. App. 3d at 445.) Although the defendant's knowledge of the exact quantity involved in the transaction was not an issue in that case, its holding is useful to the instant case because it establishes that the focus must be on whether there is sufficient evidence to prove unlawful participation, rather than the precise quantitative and qualitative level of that participation.

For the reasons stated above, the judgments of the circuit court are affirmed.

Judgments affirmed.

McMORROW, P.J., and JOHNSON, J., concur.