THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE THOMAS *et al.*, Defendants-Appellants.

Second District   Nos. 2—92—0093, 2—92—0096 cons.

Opinion filed March 9, 1993.

George C. Howard, Ltd., of Chicago (George C. Howard, of counsel), for appellants.

James E. Ryan, State's Attorney, of Wheaton, and Joan M. Kripke, of Chicago (William L. Browers, John X. Breslin, and Lawrence H. Kaschak, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendants, Jesse Thomas and Claude Thomas, were indicted in the circuit court of Du Page County on one count each of unlawful possession of cannabis with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 705(e)) and one count each of armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). Following a jury trial, both defendants were found guilty of both counts. Jesse Thomas was sentenced to three years in prison and a $1,000 fine for unlawful possession and six years for armed violence. Claude Thomas was sentenced to a three-year term of imprisonment and a $1,000 fine on the unlawful possession charge and seven years in prison for

armed violence. Both defendants timely appealed, and their appeals have been consolidated.

The following issues are raised on appeal: (1) whether the trial court erred in refusing to instruct the jury on the defense of entrapment as to Claude Thomas; (2) whether Jesse Thomas was proved guilty beyond a reasonable doubt of the unlawful possession of cannabis; (3) whether both defendants were proved guilty beyond a reasonable doubt of armed violence; and (4) whether Jesse Thomas was unduly prejudiced by an officer's testimony that Jesse admitted being an addict and marijuana user and by the prosecution's attempt to impeach him with an unsubstantiated prior conviction.

The following facts were adduced at defendants' trial. Officer Michael Cooke of the Illinois State Police testified that in April 1991 he was assigned to work with the Du Page Metropolitan Enforcement Group (DuMeg) and was involved in undercover narcotics transactions. During the first week of April, Larry Davis (a/k/a Ronald Frost), a paid informant, informed him and other DuMeg officers that he knew of someone who was interested in buying large amounts of cannabis.

On April 19, 1991, at about 8:30 a.m., Officer Cooke's electronic pager was activated and displayed a telephone number. Cooke called the number, and Claude Thomas answered. Claude told him that he had $10,000 and wanted to purchase 10 pounds of cannabis for $1,000 per pound. Claude also told Cooke that if the stuff was good, Cooke would be his main supplier. At about 11 a.m. that day, Cooke again telephoned Claude Thomas pursuant to Thomas' page, and Claude told him he was ready to "do the deal." Cooke told him he would have to obtain the cannabis and that he would get in touch with him later. Cooke called Claude Thomas at about 1 p.m. and arranged to complete the deal at a shopping mall in Oak Brook at 3 p.m. that same day.

A 10-pound bundle of cannabis, wrapped in plastic and placed in a plastic bag, was placed in a vehicle driven by Officer Robert Guerrieri of DuMeg. Cooke, who was equipped with a microphone and recording device, drove with Davis to the designated area of the shopping mall. Guerrieri drove the vehicle containing the cannabis, and other DuMeg agents were also present at the shopping mall for arrest and surveillance purposes.

As Cooke pulled into a parking space in the mall lot, an Oldsmobile driven by Claude Thomas pulled in just to the left of and facing Cooke's car. Jesse Thomas was in the passenger seat of the Olds-

mobile. Guerrieri parked his vehicle eight or nine parking spaces west of Cooke's car.

Cooke and Davis exited their car, walked over to the driver's window of the Oldsmobile and exchanged greetings with Claude and Jesse. Cooke told them he had the cannabis but that he wanted to see the money first. Jesse then exited the car and began rummaging or looking around in the trunk. According to Cooke, Jesse was told by Claude to get the $10,000 out of the trunk. The transcript of the tape-recorded conversation that occurred at the Oldsmobile does not indicate that Claude mentioned $10,000 to Jesse. Nor does it contain any reference to cannabis. After Jesse yelled he could not find it, Claude stepped out of the car and yelled that it was under papers and other material. Jesse then obtained a White Castle paper bag from the trunk and got back in the car. Cooke asked to see the money, and Jesse opened the bag and showed him a large quantity of money.

After viewing the money, Cooke told defendants that the cannabis was in another car and that one of them could walk over to the car with him. Claude Thomas exited the car, and he and Cooke went over to Officer Guerrieri's vehicle. Claude Thomas entered Guerrieri's vehicle, opened up the bag and looked at the cannabis. In doing so, he actually took the plastic-covered bundle of cannabis out of the bag it was in.

On cross-examination, Cooke admitted that a handgun found in the Oldsmobile was never in the same place as the marijuana. He also admitted that he told Claude that if he did not like the marijuana he did not have to take it. There was also no indication anywhere in the transcript of the recording that Claude ever orally accepted the marijuana or the deal. On redirect examination, Cooke stated that Jesse was present at the Oldsmobile for the entire conversation between himself and Claude.

Officer Robert Guerrieri, another DuMeg agent, testified that he was assigned to transport the cannabis for the transaction on April 19, 1991. He parked his pickup truck about 10 parking spaces from Officer Cooke's car. He observed Cooke have a conversation with the driver of the Oldsmobile while Cooke stood at the driver's side window. Shortly thereafter, the passenger exited the Oldsmobile, walked to the trunk and opened it. Claude then left the vehicle and walked towards the trunk. Jesse then shut the trunk and reentered the passenger's seat with a bag in his hand. Guerrieri identified the bag containing $10,000 seized from the Oldsmobile as the bag Jesse carried from the trunk.

A short while later, Claude and Officer Cooke walked over to Guerrieri's truck, and Claude sat down in the passenger's seat of the truck. After exchanging greetings, Claude removed the bundle of cannabis from the plastic bag and held the bundle in his hands. He turned the bundle over in his hands as he looked at it for about 10 to 15 seconds. He did not unwrap the plastic around the bundle. Guerrieri conceded on cross-examination that Claude never said "this is fine with me" or "you got a deal" or "I'll accept it." At that point, Cooke activated an arrest signal, and Claude was arrested.

Guerrieri also testified concerning an interview he and Officer Gina Argianis conducted with Claude following his arrest. According to Guerrieri, Claude told him, among other things, that he had been contacted by Jesse regarding the pager number of Officer Cooke who was interested in selling cannabis. Claude related that he obtained a portion of the $10,000 from Jesse. Claude also said that he gave the gun seized in the Oldsmobile to Jesse, and Jesse placed it either in the seat back or between the seats.

Claude agreed to Officer Argianis' writing out his statement, which Claude then signed. Guerrieri admitted that the written statement contained no specific reference to Jesse giving Claude any money, any reference to the pistol, any reference to Jesse knowing what the purpose of Claude's trip to Oak Brook was or any reference to Jesse knowing about there being $10,000 in the Oldsmobile. The written statement does, however, refer to the fact that Claude received a beeper number from Jesse. The police report prepared by Argianis and signed by Guerrieri refers to Claude's statement that he gave a pistol to Jesse but is silent as to where Jesse put the pistol. Guerrieri explained that the written statement was taken after Claude gave an oral statement, and it was not intended to be verbatim.

Officer Gina Argianis, another DuMeg officer, testified that she and Guerrieri interviewed Claude after his arrest. According to Argianis, Claude told the officers that he had obtained part of the $10,000 from Jesse, that he had given a .32 caliber revolver to Jesse for protection and that Jesse placed the gun underneath the armrest of the Oldsmobile on the way to Oak Brook.

Argianis then asked Claude to give a written statement, which he agreed to do. Argianis wrote verbatim everything Claude said from that point. At one point, Claude stated that the officers "knew the rest of the story" and that he wanted to stop. Argianis and Guerrieri concluded the interview at that time. While the written statement does not refer to Claude's having obtained money from Jesse or hav-

ing given a gun to Jesse, it does state that Jesse had called Claude the morning of April 19 to tell him that a blond-haired guy had called and said his car broke down and he would be late for the appointment and further that Jesse gave Officer Cooke's beeper number to Claude.

Officer Ken Boehm, who was on temporary assignment to DuMeg on April 19, 1991, testified that he was responsible for arresting defendants after the transaction was concluded. Upon searching the Oldsmobile after defendants' arrest, Boehm recovered a .32 caliber, five-shot revolver from an opening in the back of the seat hidden by the fold down armrest. Boehm identified a pistol as the one found in the Oldsmobile. Boehm also testified that when he arrived at the Oldsmobile he observed a white bag between Jesse's legs.

Officer John Bright of DuMeg testified that he interviewed Jesse at the police station following his arrest. In completing a personal history form, Bright asked Jesse if he was addicted to drugs and if he habitually used drugs, and Jesse responded "yes" to both questions. Jesse also stated that he had used cannabis for over 10 years. Jesse also told Bright in the interview that he came with Claude knowing Claude was going to purchase cannabis and that back at the apartment he had seen that the bag contained a large amount of money. Jesse further stated that it was Claude who had obtained the money from the trunk and had instructed Jesse to sit in the car with it. Bright admitted on cross-examination that no written statement was taken from Jesse concerning the drug transaction.

Kenneth Mason testified on behalf of defendants that he knew defendants from his going to a grocery store where they were employed. While at the store, he had occasion to meet Larry Davis in January 1991. Mason introduced Davis to Claude Thomas. According to Mason, Davis would discuss obtaining marijuana every time he saw him. On April 19, 1991, Davis gave him a piece of paper with a beeper number on it which he in turn gave to Claude Thomas. Mason had never seen Jesse Thomas smoke marijuana and had no knowledge of his being addicted to marijuana.

Jesse Thomas testified in his own behalf that he was employed in construction and made deliveries for the grocery store where his brother, Claude, worked as a security guard. Jesse first saw Davis when Davis started coming around the grocery store several months before April 1991. He denied having any business relationship with Davis.

On April 19, 1991, Claude came to the store and asked Jesse to go for a ride with him. According to Jesse, Claude did not tell him specifically where he was going or the purpose of the trip other than

that he was driving to the suburbs. They drove to a shopping center in Oak Brook and eventually parked facing the car occupied by Officer Cooke and Larry Davis. After talking to Cooke, Claude told Jesse to get the money out of the trunk. Jesse could not find the money in the trunk so Claude came back, got the money and placed it on the floorboard of the Oldsmobile. Claude had never previously discussed the money with Jesse or told him what the money was for.

Jesse denied making a statement to the police that Claude had given him a pistol for protection or that he knew why Claude went to Oak Brook. Jesse also denied being an addict, habitually using marijuana or other drugs or having been arrested in connection with any drugs. He further denied that any of the $10,000 was his, that Claude had asked him for any money or that he knew the pistol was in the Oldsmobile.

On cross-examination, Jesse admitted that once he could see a drug deal was occurring he did not try to prevent Claude from going through with it. He denied that Davis ever gave him a beeper number or that he ever gave a beeper number to Claude. After Jesse denied that he had ever been arrested previously for marijuana, the prosecution asked him if it was true that he had been arrested for possession of marijuana on April 6 and October 5, 1976. He stated that was not true.

Claude Thomas testified that he was a security guard for a grocery store on April 19, 1991. Approximately three months prior to April 19, he met Larry Davis at the grocery store when he was introduced by Ken Mason. Shortly after their meeting, Davis told him that he had a friend who could obtain large quantities of marijuana and would give him a good price. It was Davis who brought up the idea of purchasing marijuana. Davis also offered to help Claude dispose of the marijuana if Claude was willing to invest. Davis would discuss the matter at least once a day. Claude continued to tell Davis that he was not interested up until April 18 when he then said he was interested.

On that date, Davis told him his connection had 12-pound bales of marijuana for sale, and Claude responded that he could afford only 10 pounds. Davis said that would be okay, and the deal was arranged for April 19.

On April 19, Claude received a beeper number from Davis via Ken Mason. He called the number and spoke to "Mike" (Officer Cooke), and Mike told him that if he wanted to make the deal he would have to do so that day as Mike was supposed to enter the hospital. Claude then got the money together and went to the grocery store and

picked up his brother. Claude asked Jesse if he would take a ride with him but did not inform Jesse of why he was going to Oak Brook.

After parking in the shopping center lot, Davis and Cooke walked over to Claude's car. Cooke asked him if he was ready to do business, and he responded that he was as ready as he would ever be. Cooke then asked to see the money, and Claude asked Jesse to go to the trunk to get the money. He had not informed Jesse prior to that that there was money in the trunk. Jesse could not find the money and told Claude to come find it.

After showing the money to Cooke, Claude gave it to Jesse to hold until Claude looked at the cannabis. Claude walked over to Guerrieri's vehicle, opened the door and placed his left foot on the running board. When he asked where the cannabis was, someone said it was in a black garbage bag. Before he could see the bag or pick it up, he was arrested. On cross-examination, he admitted that he intended to buy the marijuana but denied ever possessing it.

Claude admitted that there was a pistol between the armrest and the seat but denied that he told Jesse there was a pistol in the car. He also denied that the pistol admitted into evidence was the pistol in his car that day.

He stated that he might have told the police in his written statement that Jesse gave him Cooke's beeper number because he was "shook up a little bit." He denied getting the number from Jesse. Claude also testified that he might have told the police that Jesse called him to tell him that the blond-haired guy was going to be late, but he could not recall saying that to the police. He denied telling the police that he gave Jesse a pistol or that he obtained part of the $10,000 from Jesse.

On cross-examination, Claude conceded that even though he told Davis to leave him alone he kept talking to Davis every day. The more Davis talked to him about dealing marijuana, the better the idea sounded. Deep down in his heart he did not want to do it, but did so in a moment of weakness. He admitted he wanted to make some money doing so.

He also admitted that Jesse knew a drug deal was going on by the time he asked Jesse to get the money out of the trunk and that Jesse did so to help him out. On redirect examination, he explained that he was guessing as to whether Jesse knew a drug deal was occurring. He brought the money back to the passenger compartment but gave it to Jesse to hold. Jesse pushed it under the seat.

Claude Thomas proffered a jury instruction on the defense of entrapment. The trial court refused the instruction based on its determi-

nation that Claude Thomas had, by testifying that he never possessed the cannabis, failed to admit that he committed the offense.

The jury found both defendants guilty of all counts. The trial court imposed sentence, and defendants appealed.

The first issue raised on appeal is whether the trial court erred in refusing Claude Thomas' request to instruct the jury on the entrapment defense. A precondition to raising the entrapment defense is that a defendant must admit that a crime was committed and that he committed it. (*People v. Gillespie* (1990), 136 Ill. 2d 496, 501.) The entrapment defense is not available to a defendant who denies committing the offense charged. (*Gillespie*, 136 Ill. 2d at 501.) In this case, defendant contends that while he denied possessing the 10 pounds of cannabis, he essentially admitted the elements of the offense and was therefore entitled to an entrapment instruction.

■ To obtain a conviction for unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the drugs and that the drugs were in his immediate possession and control. (*People v. Eiland* (1991), 217 Ill. App. 3d 250, 259-60.) Possession may be established by evidence of actual physical possession or constructive possession. (*Eiland*, 217 Ill. App. 3d at 260.) It is evident that possession of the cannabis was a necessary element of the charge in this case. Defendant denied touching or even seeing the cannabis. When asked whether he possessed the cannabis, he answered no. If the jurors had found Claude's version to be credible, they might have rejected the State's theory of possession. Because he denied one of the essential elements of the crime, he was not entitled to the entrapment instruction. As noted by our supreme court, it would be both factually and legally inconsistent for a defendant to deny committing the offense and then to assert as a defense that he committed the offense because of incitement or inducement by authorities. *Gillespie*, 136 Ill. 2d at 501.

The next contention is that Jesse Thomas was not proved guilty beyond a reasonable doubt of possession of cannabis with the intent to deliver. Jesse argues that there is no evidence to support a finding that he actually or constructively possessed the cannabis. He further maintains that the evidence does not establish that he aided or abetted Claude. A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. (*People v. Morgan* (1991), 142 Ill. 2d 410, 439.) It is not the function of the reviewing court to retry a defendant when considering a challenge to the sufficiency of the evidence of his guilt. (*Morgan*, 142 Ill. 2d at 439.)

Rather, determinations of the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. (*Morgan*, 142 Ill. 2d at 439.) The relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Eyler* (1989), 133 Ill. 2d 173, 191.

Section 5—2 of the Criminal Code of 1961 provides that a person is legally accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c); *People v. Stanciel* (1992), 115 Ill. 2d 218, 232-33.) A charge based upon accountability must necessarily flow from the principal crime charged. (*Stanciel*, 153 Ill. 2d at 233.) Accountability is not in and of itself a crime, but rather a method through which a criminal conviction may be reached. (*Stanciel*, 153 Ill. 2d at 233.) A person may be found to have aided and abetted without actively participating in the overt act itself. *Stanciel*, 153 Ill. 2d at 233.

Jesse does not argue on appeal that the evidence was insufficient to prove Claude guilty of the cannabis charge. Nor do we view any such argument as having any merit in light of the evidence of Claude's involvement in the transaction. Thus, if the evidence is sufficient to show that Jesse aided or abetted Claude with intent to promote or facilitate the commission of the offense, then Jesse was proved guilty beyond a reasonable doubt of possession of cannabis with the intent to deliver.

Officer Guerrieri testified that Claude told him in a post-arrest interview that Jesse had contacted Claude concerning Officer Cooke's pager number. Claude also stated that he obtained a portion of the $10,000 from Jesse. He also allegedly admitted to Guerrieri that he gave a handgun to Jesse prior to their arriving in Oak Brook. The written statement signed by Claude, while not mentioning the money or the handgun, did include the fact that Claude received the beeper number from Jesse. Officer Argianis' testimony essentially corroborated that of Officer Guerrieri. Additionally, Officer Bright testified that Jesse told him during the post-arrest interview that Jesse went with Claude knowing Claude was going to purchase cannabis and that while at the apartment he had observed that the bag contained a large sum of money. Also, several officers testified that Jesse re-

trieved the bag of money from the trunk and possessed the bag of money in the Oldsmobile during the drug transaction.

Jesse denied that he made any statements to the police concerning the gun, that he knew Claude's purpose for going to Oak Brook, or that any of the $10,000 was his. Claude testified that he obtained the beeper number from Ken Mason, and Mason corroborated this testimony. He denied informing Jesse of the purpose of the trip to Oak Brook. Claude admitted that he asked Jesse to get the money from the trunk and to hold it while he looked at the cannabis. Claude denied telling the police that he gave Jesse a pistol or that he obtained part of the $10,000 from Jesse. He equivocated in his denial that he told the police that he obtained Cooke's beeper number from Jesse.

■ To the extent there are conflicts in the testimony as to Jesse's knowledge and participation in the drug transaction, those credibility determinations were the responsibility of the jury. (*Morgan*, 142 Ill. 2d at 439.) When viewed in a light most favorable to the prosecution, the evidence readily supports the jury's verdict as to Jesse.

The next issue is whether both defendants were proved guilty beyond a reasonable doubt of armed violence. Specifically, defendants argue that the State failed to establish a nexus between the gun and the commission of the crime because the marijuana and the gun were never in the same location.

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1991, ch. 38, par. 33A—2.) A person is considered armed with a dangerous weapon "when he carries on or about his person or is otherwise armed with" a pistol. (Ill. Rev. Stat. 1991, ch. 38, par. 33A—1; see *People v. Condon* (1992), 148 Ill. 2d 96, 109.) To satisfy the elements of the armed violence statute, a defendant must have some type of *immediate access to* or *timely control over* the weapon. *Condon*, 148 Ill. 2d at 109-10.

According to Claude's statement to the police, Jesse knew the pistol was located behind the armrest of the front seat. Other than when he left the front seat to get the money from the trunk, Jesse remained in the Oldsmobile with the gun during the entire transaction. He clearly had immediate access to the gun during the commission of the offense. This is so notwithstanding the fact that the marijuana was located several parking spaces away in another vehicle. We do not view the armed violence statute to require, in the context of a drug transaction, that the weapon and the drugs be in the same place at the same time. This is especially so where, as here, two defendants

act in concert with one armed and the other not. The evidence supports the jury verdict as to Jesse.

■ Regarding Claude, the evidence established that Claude was in and around the Oldsmobile during part of the drug transaction. Thus, he also had immediate access to the gun, at least during part of the offense. That alone is sufficient to support the jury's verdict. Furthermore, he also had "timely control over the weapon" in that, while he was away from the Oldsmobile, Jesse, his accomplice in the transaction, had immediate access to the gun. The intended purpose of the armed violence statute is to deter felons from using dangerous weapons. (*Condon*, 148 Ill. 2d at 109.) With his accomplice having immediate access to the gun, Claude was potentially dangerous within the meaning and purpose of the armed violence statute whether or not he maintained personal access to the gun during all stages of the transaction. For both of these reasons, we hold the evidence was sufficient to prove Claude guilty beyond a reasonable doubt.

Jesse Thomas' final contention is that he was unduly prejudiced by an officer's testimony that he admitted being an addict and marijuana user and by the prosecution's attempt to impeach him with an unsubstantiated prior conviction. We begin this analysis by noting that defendant raised no objection at trial as to either of these alleged instances of trial error, resulting in waiver of these contentions. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Of course, one exception to the waiver rule is where plain error occurs. (*Enoch*, 122 Ill. 2d at 190.) Plain error, however, is a narrow and limited exception to the general waiver rule and is to be invoked only where the evidence is closely balanced or the alleged error is so substantial that it deprived the defendant of a fair hearing. (*People v. Hampton* (1992), 149 Ill. 2d 71, 100.) Otherwise, defense counsel could secure a reversal simply by intentionally failing to object and, by design, depriving the trial court of the opportunity to prevent or correct the error. *Hampton*, 149 Ill. 2d at 100.

■ In the present case, the evidence was not so closely balanced as to justify invocation of the plain error exception. There was, as discussed earlier, substantial evidence that Jesse was involved in the drug transaction and was armed with a dangerous weapon while so involved. The fact that some of the evidence may have been contradicted by defendants' evidence does not itself establish that the evidence was closely balanced.

Likewise, the alleged errors, if any, were not of the magnitude that defendant was denied a fair trial. Defendant's own lawyer asked him if he had ever been arrested for a marijuana offense, to which

defendant answered no. The State on cross-examination asked defendant if he had been arrested twice for marijuana offenses in 1976, to which defendant said no. There is no other mention of defendant having been arrested before for a marijuana offense, and the prosecutor did not refer to it in closing argument. Even if it had been error for the State to have failed to offer proof of defendant's prior arrests, such error was insignificant under the facts of this case.

Furthermore, as to Officer Bright's testimony that defendant admitted he was an addict and a 10-year user of cannabis, we cannot say that such testimony deprived defendant of a fair trial. There was no other reference to this statement by the prosecution. Any error was not of the magnitude to conclude that Jesse was denied a fair trial.

Finally, we note, as the State points out in its brief, that Jesse Thomas' appellate brief contains no specific references to the record nor cites any law in support of these last two arguments in violation of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). (See *People v. Trimble* (1989), 181 Ill. App. 3d 355, 356.) We are entitled to have the issues clearly defined and to be cited pertinent authority. (*Trimble*, 181 Ill. App. 3d at 356.) This court is not a depository into which the appellant may dump the burden of argument and research. (*Trimble*, 181 Ill. App. 3d at 356.) Arguments such as these do not merit consideration on appeal and shall be deemed waived. See *Trimble*, 181 Ill. App. 3d at 357.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

UNVERZAGT and GEIGER, JJ., concur.