THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SALVADOR RAYA, Defendant-Appellant.

Third District   No. 3—92—0886

Opinion filed September 9, 1993.

Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Salvador Raya appeals to this court from a conviction of unlawful possession of a controlled substance with the intent to deliver in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A)). The circuit court of Rock Island County entered judgment following a jury trial. Defendant was sentenced to a seven-year term of imprisonment and fined $4,000.

The record indicates that on May 9, 1992, Detective Mark Hanna of the Moline police department obtained a search warrant to search the house of Mathias Pizano for narcotics. On May 8, 1992, Detective Hanna had been informed from a confidential source that there would be a party at Pizano's house and that drug activity was expected at the party. Detective Hanna testified that Mathias Pizano, Mario Bara-

jas, and Karen and Coss Gatarez were targeted as suspects for possible drug activity.

Officer Jerome Patrick testified that he was the first officer to enter Pizano's house, and that after securing the downstairs area, he was told by Officer Brockway that there was a white powdery substance in the upstairs laundry room. In the laundry room, Officer Patrick found a plastic bag containing a white powdery substance and an Illinois identification card belonging to the defendant. Officer Hanna testified that he observed the plastic bag lying open on a dryer, with two "lines" of cocaine out on the flap of the open bag, along with the defendant's ID card. Morton crime lab employee Michelle Dierker examined the plastic bag and determined that it contained 25.8 grams of a substance containing cocaine.

Detective George Miklas testified that he entered the backyard of the Pizano residence and observed another officer arresting Mario Barajas, who had a narcotics scale, some cocaine and $2,660 in cash on his person. Detective Miklas then saw the defendant and another individual looking out of the back door of the Pizano residence. He chased the two individuals, eventually seizing and arresting the defendant. Detective Miklas testified that the defendant did not have any drugs on his person. Detective Steven Brockway testified that he spoke with the defendant at the Moline police department. Detective Brockway stated that after being advised of his *Miranda* rights, the defendant told the detective that the cocaine did not belong him, but belonged to unknown persons who were in the laundry room with Mathias Pizano, and that these people had asked to borrow his ID card in order to cut "lines" of cocaine. Mathias Pizano testified for the defense, but he testified that he was not in his house when the police executed the search warrant and that he was not in the laundry room at any time with a bag of cocaine. He also testified that he did not see the defendant in the laundry room with a bag of cocaine.

The defendant did not testify at trial.

Fernando Castillo testified for the defense that he had obtained an ounce of cocaine from a man named Pajaro. Castillo stated that Pajaro left the "baggy" of cocaine with him and that Pajaro was to return to get the bag but was to leave him a portion of the cocaine. Pajaro had not returned after about an hour, so Castillo left the cocaine at a neighbor's house and went over to the party at Pizano's house. Castillo testified that while at Pizano's house, people at the party asked him to go and get the cocaine from the neighbor's house, and bring it to the party, but that the defendant did not ask him to go and get the cocaine. Castillo further testified that he brought the bag

of cocaine to Pizano's house and took it upstairs to the laundry room. After taking the cocaine to the laundry room, he went downstairs and had not returned to the laundry room when the police executed the warrant. Castillo stated that after he learned that the defendant had been arrested for possession of the cocaine in the laundry room, he gave a statement to the police because the cocaine belonged to him, and not the defendant. Officer Hanna testified for the defense that he did not recall the defendant having any tubing or straws which could be used to ingest cocaine. Officer Hanna further testified that Castillo, who had not yet been arrested, was taken to the Moline police department immediately after testifying.

Manuel Alonzo testified for the defense. Alonzo testified that he was at Pizano's house and that he borrowed the defendant's ID card so that Castillo could use it to gain admission into a tavern. Alonzo testified that he was in the laundry room along with the defendant and Castillo when the police executed the warrant, that there were approximately four people in the laundry room at that time, and that he did not see any cocaine. He further stated that all four persons walked downstairs from the laundry room when the police arrived, and that he and Castillo were taken into custody by the police.

The State called Officer Hanna as a rebuttal witness. He testified that Castillo gave a taped statement on July 19, 1992. Officer Hanna stated that during the statement, Castillo stated that he was upstairs with the defendant when the police entered the house, and that the defendant had asked him to bring the cocaine to the party. Detective Brockway then testified as a rebuttal witness for the State. He stated that he had a conversation with Castillo on September 23, 1992, during which Castillo stated that the defendant had asked him to bring the cocaine to Pizano's house. Officer Brockway also testified that Castillo stated that the defendant was in the laundry room with him and had given him his ID card which he used to cut the cocaine.

On appeal, the defendant contends that (1) the State failed to prove beyond a reasonable doubt that the defendant was guilty of unlawful possession of a controlled substance with the intent to deliver, under an accountability theory, (2) the defendant was denied a fair trial due to comments made by the prosecutor during closing argument, and (3) in the event that this court does not reverse the defendant's conviction, defendant's fines should be reduced by $255 monetary credit for his 51 days of pretrial and presentence incarceration.

The decisive issue in this case is whether the prosecution proved the defendant guilty beyond a reasonable doubt of unlawful possession of a controlled substance with the intent to deliver, based on a theory

of accountability for the acts of Fernando Castillo. The applicable test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) The defendant argues that it was the prosecution's burden to prove that the defendant had the specific intent that another person deliver the cocaine to a third person, to sustain a conviction of unlawful possession of a controlled substance with the intent to deliver. (Ill. Rev. Stat. 1991, ch. 56½, par. 1401 (a)(2)(A).) The defendant further contends that the prosecution offered insufficient evidence to prove such intent. We agree.

Under the theory of accountability of section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 5—2), the State must show: (1) the defendant solicited, aided, abetted, agreed, or attempted to aid another in the planning or commission of an offense; (2) the participation took place either before or during the commission of the offense; and (3) the defendant had the concurrent specific intent to promote or facilitate the commission of the crime. (*People v. Haynes* (1991), 223 Ill. App. 3d 147, 150, 853 N.E.2d 1177, 1179.) The Illinois Supreme Court recently stated that "[a]ccountability, tied as it is to the crime charged, must comport with the requirements of that crime. Thus, for example, the charge of assault with intent to rape, a specific intent crime, must require a specific intent for one who is accountable as well." (*People v. Stanciel* (1992), 153 Ill. 2d 218, 234, 606 N.E.2d 1201, 1209.) As a result, in the present case, the prosecution had the burden of proving beyond a reasonable doubt that the defendant had the specific intent to have Castillo bring the drugs to the party for the purpose of delivering them to others, not only for the defendant's own personal use.

■ The State correctly contends that its burden was to prove that the defendant shared the intent of the principal or that there was a community of unlawful purpose, to establish the specific intent to promote or facilitate the commission of a crime. (*People v. Gil* (1984), 125 Ill. App. 3d 892, 895, 466 N.E.2d 1205, 1208.) However, the State errs in stating that "the evidence satisfactorily established that defendant had a specific intent to promote the unlawful commission of a crime, *to wit*, the unlawful possession of a controlled substance with the intent to deliver it." In the light most favorable to the State, the evidence could only have established that the defendant asked Castillo to bring the cocaine to Pizano's house, that the defendant gave Castillo his ID card to use to cut the cocaine, and that the defendant was

in the laundry room and intended to ingest some of the cocaine. Nowhere in the record are there facts establishing that the defendant asked or indicated to Castillo that he should sell or give any of the cocaine to others at the party.

The State cites several cases to support its accountability theory. (*People v. Saunders* (1990), 206 Ill. App. 3d 1008, 565 N.E.2d 183; *People v. Parks* (1978), 57 Ill. App. 3d 405, 373 N.E.2d 783; *People v. Thomas* (1993), 242 Ill. App. 3d 266, 609 N.E.2d 1067.) However, each of these cases involved the sale of narcotics, and in each case, there was evidence that the defendant had knowledge of and assisted in the sale or purchase of narcotics. In *Saunders*, the evidence established that the defendant was involved in an attempted sale of cocaine to undercover police officers (*Saunders*, 206 Ill. App. 3d at 1011, 565 N.E.2d at 185-86). In *Parks*, a police officer testified that the defendant had represented to the officer and a "confidential source" that he possessed certain amounts of mescaline or LSD for possible sale to the officer, which defendant's companion eventually delivered to the officer's "confidential source" (*Parks*, 57 Ill. App. 3d at 407, 373 N.E.2d at 784-85). Finally, in *Thomas*, testimony established that the defendant assisted his cohort in the attempted purchase of 10 pounds of marijuana from undercover officers, including retrieving the purchase money from the trunk of a car (*Thomas*, 242 Ill. App. 3d at 275-76, 609 N.E.2d at 1074). Each of these cases involved narcotics transactions in which the evidence tended to establish that the defendants intended the present or future distribution of drugs to others.

The State also cites *People v. Tinoco* (1989), 185 Ill. App. 3d 816, 541 N.E.2d 1198, and *People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544, for the proposition that the fact finder may infer the defendant's accountability from his approving presence at the scene of the crime and from evidence of conduct showing a design to aid in the offense. However, as in the cases mentioned above, in both *Tinoco* and *Schlig* the defendants were involved in the sale of narcotics to undercover agents. In both cases, evidence established that the defendants, through their communications, intended to assist in the distribution of narcotics to third persons. As stated above, the evidence in this case tends only to establish that the defendant requested cocaine for his own use, and not for distribution to others.

If this defendant can be held criminally responsible for having the intent to deliver narcotics under the facts in this record, then every person who solicits drugs from a supplier or source for his own personal ingestion could be held accountable for the possession with the

intent to deliver of the supplier. This analysis is addressed in the committee comments to the accountability statute. (Ill. Rev. Stat. 1991, ch. 38, par. 5—2.) The comments point out that subsections (c)(1), (c)(2) and (c)(3) "state certain principles for relieving a person from accountability for the conduct of another who would otherwise fall under the prior provisions of subsection (c)." (Ill. Ann. Stat., ch. 38, par. 5—2, Committee Comments—1961, at 236 (Smith-Hurd 1989).) Subsection (c)(2) states that a person is not so accountable if "[t]he offense is so defined that his conduct was inevitably incident to its commission." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(c)(2).) The comments then note that "[t]he Model Penal Code suggests such examples as these \*\*\*. \*\*\* Should a bribe-taker be guilty of bribery?" (Ill. Ann. Stat., ch. 38, par. 5—2, Committee Comments—1961, at 236 (Smith-Hurd 1989).) We find this analysis applicable to the case at hand. One who solicits narcotics for his own personal use should not be held accountable for the distributor's intent to deliver. There are simply insufficient facts in the record for a jury to conclude beyond a reasonable doubt that the defendant intended the cocaine to be delivered to anyone other than himself.

■ Pursuant to Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), this court may reduce the degree of an offense when a lesser included offense is involved. (*People v. Williams* (1991), 222 Ill. App. 3d 129, 138, 582 N.E.2d 1158, 1164.) The State asks that, in the event that this court finds insufficient evidence to sustain the conviction of unlawful possession of a controlled substance with the intent to deliver, we enter a judgment of conviction on the lesser included offense of unlawful possession of a controlled substance. A lesser included offense "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1991, ch. 38, par. 2—9.) The evidence in this case was insufficient only in establishing the culpable mental state of intent to deliver. Because the evidence in this case was sufficient to establish beyond a reasonable doubt the offense of unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½ par. 1402(a)(2)(A)), we grant the State's request.

Defendant next contends that he was denied his right to a fair trial as a result of two comments made by the prosecutor during closing arguments. The defendant has waived his right to preserve this issue for review. To preserve issues for appeal, *"[b]oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in

original.) (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Defense counsel objected to the prosecutor's comments neither at trial, nor in a post-trial motion. However, the defendant urges us to apply the plain error exception to the waiver rule to reverse defendant's conviction. For an appellate court to invoke the plain error rule, it must be plainly apparent from the record that error affecting substantial rights was committed. Error may be deemed plainly apparent when the evidence is closely balanced or the error was of such magnitude that the defendant was denied a fair trial. *People v. Whitehead* (1987), 116 Ill. 2d 425, 447-48, 508 N.E.2d 687, 695-96.

■ The defense contends that the prosecutor made two statements during closing argument that constitute plain error. These statements were:

"Use your common sense also when you think who has a motive to lie, who has a motive to make up a story in this case. The police? Salvador Raya wasn't even one of the people targeted in execution of the search warrant. The Defendant and his friends. They're here to get Salvador off.
* * *
Well who do you believe? *** Do you believe the testimony, because if you do and if you believe the police are making up a story about Salvador Raya well then its your duty to find the defendant not guilty. But, I think you'll believe the Police. Your duty is to find the defendant guilty."

These statements, taken in context, were not of such magnitude as to constitute plain error. Nor was the evidence so closely balanced in light of the evidence at trial establishing the defendant's possession of the cocaine to apply the plain error doctrine. The issue is waived.

■ Finally, the defendant contends that his $4,000 in fines should be reduced by $255 to reflect the monetary credit for his 51 days of pretrial and presentence incarceration. The trial judge levied a mandatory drug assessment fine of $3,000 and a "street value" fine of $1,000. The defendant argues that he should receive the $5-per-day credit against his fines for both the 16 days he served in the county jail prior to trial and the 35 days served between trial and sentencing pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 110—14). Section 110—14 allows such credit when the defendant is incarcerated on a "bailable offense." (Ill. Rev. Stat. 1991, ch. 38, par. 110—14.) The State contends that once the defendant's bond was revoked upon the guilty verdict, he was no longer incarcerated on a "bailable offense"; thus, defend-

ant should receive monetary credit only for the 16 days of pretrial incarceration. In this court's recent decision in *People v. Bennett* (1993), 246 Ill. App. 3d 550, we stated that "[t]he statute does not make a distinction between defendants who are financially unable to post bond and those who are denied the opportunity to post bond by the trial court. The statute also does not prohibit the award of credit for the period of incarceration after a guilty finding." (*Bennett*, 246 Ill. App. 3d at 551-52.) Thus, the defendant is entitled to $5-per-day credit for 16 days' pretrial incarceration as well as the 35 days' incarceration between the end of his trial and sentencing.

For the reasons stated, the defendant's conviction is reduced to one of unlawful possession of a controlled substance. The defendant's sentence is vacated and the cause is remanded for resentencing, with defendant to receive credit for 51 days of incarceration to be charged against the fines levied.

Affirmed as modified and remanded.

McCUSKEY, P.J., and SLATER, J., concur.