*In re* E.B. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Robert Burns, Respondent-Appellant).

Fourth District    No. 4—99—0596

Opinion filed June 29, 2000.

McCULLOUGH, J., dissenting.

Peter T. Borich, of Beckett & Webber, P.C., of Urbana, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Sherman J. Brown, of Sherman J. Brown Law Offices, of Champaign, guardian *ad litem*.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In October 1998, respondent mother stipulated to a neglect petition that alleged her children were in an injurious environment because she exposed the children to the risk of sexual abuse. Respondent father waived a hearing on the neglect petition and agreed to the court taking judicial notice of respondent mother's stipulation. The court continued the case under supervision (705 ILCS 405/2—20 (West 1998)) at the recommendation of the State and the agreement of all parties.

In May 1999, the trial court *sua sponte* entered an adjudicatory order finding respondents' children neglected. However, no petition to terminate continuance of the case under supervision had been filed, and no hearing to terminate supervision had been held. See 705 ILCS 405/2—20(5) (West 1998). In June 1999, the court held a dispositional hearing, found the children neglected, and removed custody and guardianship from respondent parents and placed them with the Department of Children and Family Services (DCFS). Respondent father appeals, arguing that removal was not in the best interests of the children. We reverse and remand under Supreme Court Rule 615 (134 Ill. 2d R. 615) because the trial court terminated continuance of the case under supervision and entered the adjudicatory order in a manner that was inconsistent with section 2—20(5) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—20(5) (West 1998)).

## I. BACKGROUND

Both parents appealed the trial court's order removing custody and guardianship, docketed Nos. 4—99—0596 (respondent father) and 4—99—0612 (respondent mother). This opinion addresses only the father's appeal, No. 4—99—0596. Facts relating to the respondent mother are discussed for the purpose of clarity.

Respondents Christa and Robert Burns are the biological parents of E.B., born September 25, 1992, and W.B., born December 11, 1994. DCFS received the following five indicated reports of abuse prior to the filing of the neglect petition in this case.

In March 1995, DCFS received a hot-line report alleging inadequate supervision due to respondent father being intoxicated while babysitting for the children. In March 1996, DCFS received an additional hot-line report alleging risk of harm to the children by respondent father.

In September 1997, DCFS received a hot-line report alleging that an uncle sexually molested E.B. DCFS opened a file on the family in October 1997 in response to the report.

In June 1998, DCFS received a hot-line report alleging inadequate and inappropriate supervision of the children based on respondent mother's inability to prevent five-year-old E.B. from sexually acting out with three-year-old W.B.

In July 1998, DCFS received an additional hot-line report alleging risk of sexual harm to E.B. and W.B. because a convicted sex offender resided with the children.

In August 1998, the State filed a two-count petition pursuant to section 2—3(1)(b) of the Act (705 ILCS 405/2—3(1)(b) (West 1998)), alleging that the children's environment was injurious to their welfare

because the environment exposed the children to sexual abuse (count I) and alcohol abuse (count II).

In September 1998, the trial court held a shelter-care hearing. The court found probable cause for the allegations in the petition and set an adjudicatory hearing. However, custody of the children remained with respondent mother.

In October 1998, the trial court held an adjudicatory hearing. Respondent mother initially agreed to stipulate to the petition on the condition that the case would be continued under supervision pursuant to section 2—20 of the Act (705 ILCS 405/2—20 (West 1998)). The trial court would not accept a conditional stipulation, however, because it wanted to know the facts of the case before agreeing to supervision. The trial court also informed the parties that their decision to stipulate to the facts or waive a hearing was completely independent from, and would have no impact on, whether the court continued the case under supervision.

After additional discussion with counsel, respondent mother once again agreed to stipulate to count I. In response, the State struck respondent father's name from count I of the petition and withdrew count II. Respondent father then waived a hearing on count I and agreed to the court taking judicial notice of respondent mother's stipulation. The court continued the matter under supervision at the recommendation of the State and with the agreement of all parties. The trial court based its order continuing the case under supervision on the condition that respondents "cooperate fully and completely with [DCFS]." The court then set the matter for a status review in April 1999.

The docket entries show at least two continuances in April 1999. The docket entries reveal that respondent mother's counsel was unavailable for the first review date and that respondent father was unavailable at the second review date. The trial court continued the matter until May 1999.

In May 1999, respondent father's attorney again moved for a continuance because DCFS failed to file its report on time. The transcript reveals that no party objected to the respondent father's motion, and the court continued the matter until June 1999. No other issues were discussed.

Later that same day in May 1999, the trial court inexplicably entered an adjudicatory order finding "[b]y a preponderance of the evidence and by clear and convincing evidence, the minors have an environment injurious to their welfare by reason of said environment expos[ing] the minors to risk of sexual abuse [because] respondent mother allowed Robert Skaggs, [knowing that Skaggs was] a convicted

child molester, to live in the home with the minors for a minimum of two weeks." However, no docket entry reveals that any party had filed a petition to terminate respondents' supervision, and nothing in the record indicates that a hearing took place prior to the court entering its order terminating supervision in the case.

In June 1999, the trial court held a dispositional hearing. The trial court asked if each party had received DCFS' reports dated April, May, and June 1999. Both respondents' counsel asserted that they had received the reports and had no additions, corrections, or additional evidence to present.

The reports described the case history to date and briefly reviewed the previously described indicated reports. The reports also informed the court that respondent father had pleaded guilty to aggravated battery to a child and was at that time serving an eight-year sentence on that offense. Respondent father was due to be released in April 2000. The reports stated that respondent father maintains his innocence.

The reports also revealed that two separate indicated reports involving the respondent father's paramour's children were filed against respondent father for (1) sexual abuse to a child in May 1997 and (2) risk of harm to a child in March 1996. Respondent father asserts, however, that he never previously received notice of these indicated reports and planned on filing an appeal with DCFS because he disputed the factual basis for each.

The May and June 1999 reports concluded by expressing concern over the lack of counseling that respondent father had received while incarcerated. The May report specifically suggested that respondent father's denial and minimization of his behavior and the consequence of his behaviors posed a significant problem. The report recommended that custody and guardianship be awarded to DCFS based primarily on the fact that (1) respondent father had received no services and continued to maintain his innocence on the charged offenses and indicated reports, and (2) respondent mother continued to believe in her husband's innocence and desired to reintegrate her husband into the family upon his release from prison.

Prior to rendering its decision at the dispositional hearing, the court stated:

"The—first of all counsel, I don't know if I mentioned this. This has been continued several times. I did enter an adjudicatory order in this cause back on May 27, 1999. I don't know if copies got distributed. All right. They did? All right. I just want to verify that.

Second clean[ ]up matter, I don't know if I—when we had the initial hearing as to the possibility of continuing the court supervision[,] if I specifically enunciated my reasons for not wishing to

grant supervision in this matter, so I thought I would at least review that today.

First of all, there was an objection by one of the parties, and obviously that knocks out any possibility of supervision, but for the sake of the record, I will also note that I believe the respondent mother may have been doing all that she could, but that was not enough at that point. The case had been previously under supervision for six months and had not been resolved."

The court then asserted that it concurred with the more recent DCFS reports' concerns regarding respondent mother's continuing relationship with respondent father.

Immediately following the court's comments, the State agreed with the court's reasons for previously terminating continuance of the case under supervision and asserted that "the court has to find both of these parents unfit." The State asked the court to adopt the June report's recommendations and remove custody of the children from respondent mother. The court's recall of events regarding the continuance of the case under supervision went unchallenged by the parties, however, even though the record clearly demonstrates that no party objected to supervision until the dispositional hearing.

Shortly after the dispositional hearing concluded, the trial court entered a written order finding the children neglected and making each a ward of the court. The court further found respondent parents "unfit for reasons other than financial circumstances alone," and that it was in the best interests of the children to remove custody from respondent parents. The trial court then set a permanency hearing for December 1999. Respondent father appealed.

## II. ANALYSIS

The basic issue before this court is whether a trial court may terminate continuance of a case under supervision under section 2—20 without a petition to terminate continuance under supervision having been filed or a hearing on such a petition having been held. Although not raised by respondent father, this matter was raised by respondent mother in the companion appeal (No. 4—99—0612). We address this issue under Supreme Court Rule 615 (134 Ill. 2d R. 615) and hold that a court may not do so.

The preeminent rule of statutory construction is to give effect to the language and intent of the legislature. *People v. Hicks*, 164 Ill. 2d 218, 222, 647 N.E.2d 257, 259-60 (1995). To accomplish this goal, words used in the statutory provision should be given their plain and ordinary meaning. *Hicks*, 164 Ill. 2d at 222, 647 N.E.2d at 259. A court must therefore consider every part of the statute together and give every word or phrase some reasonable meaning. *People v. Bubolz*, 288

Ill. App. 3d 46, 46-47, 679 N.E.2d 854, 855 (1997). Statutes are to be construed so that no clause is superfluous or void. *In re Marriage of Stevens*, 292 Ill. App. 3d 994, 1001, 687 N.E.2d 165, 169 (1997). In addition, a court must assume that the legislature did not intend an absurd result. *People v. Coleman*, 166 Ill. 2d 247, 253, 652 N.E.2d 322, 325 (1995).

■ The plain language of the statute indicates that the trial court terminated continuing the case under supervision and entered its adjudicatory order in violation of section 2—20 of the Act. Section 2—20 states:

"(1) The *court may* enter an *order* of continuance under *supervision* (a) upon an admission or stipulation by the appropriate respondent *** of the facts supporting the petition and *before* proceeding to findings and *adjudication, or* after hearing the evidence at the adjudicatory hearing but *before* noting in the minutes of proceeding a *finding* of whether or not the minor is abused, *neglected* or dependent; *and* (b) *in* the *absence of objection* made in open court by the minor, his parent, guardian, custodian, responsible relative, defense attorney[,] or the State's Attorney.

(2) If the minor, his parent, guardian, custodian, responsible relative, defense attorney[,] or the State's Attorney, objects in open court to any such continuance and insists upon proceeding to findings and adjudication, the court shall so proceed.

\* \* \*

(5) *If a petition is filed* charging a violation of a condition of the continuance under supervision, *the court shall conduct a hearing. If the court finds that* such condition of *supervision has not been fulfilled*[,] *the court may proceed to* findings and *adjudication and disposition.*" (Emphasis added.) 705 ILCS 405/2—20 (West 1998).

The plain language of section 2—20(1) clearly requires that any objection to supervision must be made in open court "before" the imposition of supervision. However, no party objected to continuance of the case under supervision here until after the court terminated continuance under supervision and entered its adjudicatory order.

In addition, the only condition that the trial court imposed in its order continuing under supervision required respondents to "cooperate fully and completely with [DCFS]." Section 2—20(5) of the Act states that "[i]f the court finds that such condition of supervision has not been fulfilled[,] the court may proceed to findings and adjudication and disposition." 705 ILCS 405/2—20(5) (West 1998). However, section 2—20(5) also requires that "the court shall conduct a hearing" prior to making a finding of noncompliance with a condition of supervision. 705 ILCS 405/2—20(5) (West 1998).

■ The court clearly did not hold a hearing to determine whether

the parents were cooperating fully and completely with DCFS prior to terminating respondent's supervision. Instead, the trial judge *sua sponte* terminated the continuance under supervision in response to the May 1999 status report from DCFS. The trial court terminated continuance under supervision, therefore, prior to any objection in open court—without the benefit of a petition alleging a violation of a condition of supervision and without the benefit of hearing to determine whether any allegations in the status report were true.

Due process requires adequate notice to a minor's parents prior to a juvenile proceeding. *In re C.L.T.*, 302 Ill. App. 3d 770, 778, 706 N.E.2d 123, 129 (1999). Section 1—5(1) of the Act states that the parents of a minor who is subject to a proceeding under the Act have "the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, [and] to examine pertinent court files and records." 705 ILCS 405/1—5(1) (West 1998). The court's actions, therefore, were inconsistent with both section 2—20(5) and section 1—5(1), because it terminated continuance of the case under supervision without notice or an opportunity to be heard.

The trial court's alarm in the face of this situation is understandable. Regrettably, the State did not undertake appropriate action to terminate the continuance under supervision. However, the Act requires that respondents be provided with notice and a hearing as to whether respondents violated any conditions prior to terminating the continuance of the case under supervision. On remand, the State may file a petition to terminate the continuance under supervision and proceed accordingly.

## III. CONCLUSION

For the reasons stated above, we reverse and remand the judgment of the trial court.

Reversed and remanded.

COOK., P.J., concurs.

JUSTICE McCULLOUGH, dissenting:

On June 18, 1999, the State's Attorney, the guardian *ad litem* (GAL), the respondent mother and her attorney, the respondent father and his attorney, and DCFS by its attorney were present before the court. The court stated the cause was "called for dispositional hearing." The trial court then stated the entry of the adjudicatory order on May 29, 1999. It then reviewed various reports that had been filed. In response, the State, the GAL, respondent mother's attorney, and

respondent father's attorney stated that they had "no additions, corrections or additional evidence." Each party was given an opportunity to address the reports and make recommendations. The trial court then made a detailed and expansive statement concerning its order appointing DCFS as guardian, advised the parties of their right to appeal, and set the matter for a permanency hearing.

None of the parties objected to proceeding with the dispositional hearing. Respondent father made no objection then or now to any failure to comply with section 2—20 of the Act. The issue is raised *sua sponte* by this court. The majority suggests that no hearing was held concerning the cooperation of the parents with DCFS. I believe a review of the record shows the trial court had the reports of DCFS, had the benefit of all the parties' input with respect to those reports, provided each party an opportunity to present additional evidence, and made its detailed findings. The trial court's actions were not inconsistent with section 2—20(5) or section 1—5(1) of the Act. The parties were present, given an opportunity to be heard, and given all of the rights set forth in section 1—5(1) of the Act.

I would affirm the trial court's decision.