THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THADDEUS H. NEYLON, Defendant-Appellant.

Fourth District    No. 4—00—0936

Argued November 6, 2001.—Opinion filed January 14, 2002.

302

MYERSCOUGH, J., specially concurring in part and dissenting in part.

Dennis M. Doherty (argued), of Chicago, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial in Macon county circuit court, defendant, Thaddeus Neylon, was found guilty of armed violence (personally discharging a firearm while committing a felony not excepted by statute) (720 ILCS 5/33A—2(b) (West 2000)), armed violence (armed with a firearm while committing a felony not excepted by statute) (720 ILCS 5/33A—2(a) (West 2000)), unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(c) (West 2000)), and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2000)). At sentencing, the trial court found the two armed violence convictions merged and sentenced defendant to a prison term of 20 years on armed violence (discharging a firearm) and concurrent terms of 4 years and 1 year, respectively, for unlawful possession of a controlled substance with intent to deliver and unlawful possession of cannabis with intent to deliver.

Defendant appealed, claiming (1) armed violence (personally discharging a firearm) was not a statutory offense at the time of the charged act; (2) the statute providing for the offense of armed violence (personally discharging a firearm) did not have a penalty provision in

effect on the date he committed the charged act; (3) the State failed to provide sufficient evidence to support any of the four convictions; (4) trial counsel provided ineffective assistance; and (5) the trial court abused its discretion in sentencing defendant for armed violence (personally discharging a firearm). We affirm in part, reverse in part, and remand for issuance of an amended judgment of sentence.

Evidence for the State at trial was as follows: On March 13, 2000, Decatur police officer Marty Lowhorn was sent to investigate a "shots fired" call on the 400 block of E. Grand Street at approximately 11:59 a.m. He arrived at the scene and saw Officer Thomas handcuffing defendant in front of the house at 431 E. Grand. Defendant was placed in Officer Lowhorn's car. After speaking with several witnesses in the area, Officer Lowhorn looked on the east side of the house and found five spent .38-caliber shell casings in the grass and dirt between the house at 431 E. Grand and the vacant house next door. Officer Lowhorn asked defendant if he could search the house at 431 E. Grand for a weapon and defendant replied it was not his house.

At that time, Teresa Jenkins arrived and was asked permission to search the house. Defendant asked to speak to Jenkins and was allowed to do so. Jenkins then told Officer Lowhorn she would take him to a gun. Jenkins pointed out a closet in one of the bedrooms where Officer Lowhorn found a .38-caliber semiautomatic pistol. The magazine was empty and the pistol was not loaded.

A car parked behind the house had license plate THADD 20. Officer Lowhorn searched the vehicle and found a box of live .38-caliber cartridges.

As Officer Lowhorn was transporting defendant to the police station, defendant told him he had heard Lowhorn talking and Lowhorn did not have any witnesses who saw defendant shoot because defendant had been inside. Defendant also stated lots of people have a range in their house.

Jeff McClain, an inspector with the Illinois State Police Drug Task Force, took part in searching the house at 431 E. Grand on March 13, 2000, after Jenkins gave her consent. In the top drawer of a dresser located in one of the bedrooms, he found a plastic bag containing what were later identified by Michael Cravens, a forensic scientist at the Illinois State Police forensic laboratory specializing in drug analysis, as a 12.8-gram bag of cocaine and two bags containing 13.6 grams of cannabis. McClain found a small electronic digital scale and a postal scale in the same dresser drawer. Cravens later found cocaine and cannabis residue on the digital scale. A rolled-up shirt containing a 9-millimeter magazine containing eight live rounds of ammunition and several documents with defendant's name on them for that address were also found in the same dresser drawer.

On the rear porch of the residence was a refrigerator. McClain found a small plastic bag, which Cravens later found contained .2 grams of cocaine, on top of that refrigerator.

When arrested, defendant had $770 on his person. At the police station, defendant admitted ownership of the 9-millimeter magazine and digital scale, claiming he found the magazine and had been given the scale. He denied knowledge of the narcotics. He claimed Jenkins' brother did not like him and told him he was going to set him up by planting drugs. Defendant also told McClain he was under the impression it was permissible to shoot a gun on his own property.

Officer Edward Root, a Decatur police officer assigned to the Illinois State Police Narcotics Task Force, testified as an expert on narcotics distribution and use. He stated the scales found were used in the distribution of narcotics because dealers, not users, typically measure the amount of drugs. In addition, he testified the amounts of cocaine and cannabis found were greater than user quantities. He also stated firearms are commonly found in the drug distribution business because of the large sums of money involved.

Vicky Will testified she is a forensic scientist with the Illinois State Police crime lab specializing in firearms identifications. She tested the five spent .38-caliber shell casings with new casings she fired from the .38-caliber gun found in the closet. Three of the five tested were identified as having been fired from the gun.

Teresa Jenkins testified for the defense. Jenkins rents the house at 431 E. Grand and lives there with her children and, more recently, defendant. She and defendant left for a weekend in Chicago on March 10 and returned on the morning of March 13, 2000. Prior to leaving, Jenkins gave keys to her home to Patricia Brooke, a former neighbor, to clean the house, and to John Cummings, a relative of her stepfather, to check on the house occasionally.

Jenkins left the home around 11 a.m. on March 13, 2000, to get lunch, and, when she returned, the police were there. After a discussion with defendant, Jenkins gave police permission to search the house. She knew defendant had a gun but thought he had left it at his mother's home in Chicago. Defendant told her where the gun was, and she showed the police. Jenkins consented to a further search of the house. She had no idea there was cannabis or cocaine in the top dresser drawer. Both she and defendant had items in that drawer. Jenkins had two cellular phones there as well as paper, bills, and receipts in her name; she had placed defendant's papers there as well. Jenkins identified the room where the dresser was located as her and defendant's bedroom.

John Cummings testified he got a set of keys from Jenkins on

March 9 or 10 to use her van and to check on her house over the weekend. When he checked on the house, he found Brooke having a party with three men who were smoking pot in the living room. He also smelled the burning odor of crack cocaine in the house. Cummings started to look around the house and saw Brooke coming out of Jenkins' bedroom. He asked her what she was doing there. He took back the key to the house from Brooke, put everyone out of the house, and locked it up.

The jury found defendant guilty of (1) unlawful possession of a controlled substance with intent to deliver, (2) unlawful possession of cannabis with intent to deliver, (3) armed violence (armed with a handgun), and (4) armed violence (personally discharging a handgun).

Defendant contends the State failed to prove him guilty beyond a reasonable doubt of armed violence (personally discharging a firearm) as the evidence was insufficient to sustain a conviction. We agree with defendant.

■ When a reasonable doubt argument is raised, the relevant question is whether, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Every element of the offense must be proved beyond a reasonable doubt. *People v. Tye*, 141 Ill. 2d 1, 15, 565 N.E.2d 931, 938 (1990). This standard of review applies whether the evidence is direct or circumstantial. *People v. Pintos*, 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346 (1989).

■ To prove defendant guilty of armed violence (personally discharging a firearm) as charged in this case, the State had to prove the statutory elements of the offense: (1) defendant knowingly possessed a controlled substance, cocaine; (2) he personally discharged a firearm; and (3) when he discharged the firearm he did so while committing a felony not expressly excepted by statute, unlawful possession of a controlled substance. 720 ILCS 5/33A—2(b) (West 2000).

■ Defendant does not contest the white powdery substance found in the bedroom tested positive for cocaine, a controlled substance. To establish possession, the State must prove defendant had knowledge of the presence of the substance and had it in his immediate and exclusive dominion or control. *People v. Schmalz*, 194 Ill. 2d 75, 82, 740 N.E.2d 775, 779 (2000); *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 203, 625 N.E.2d 945, 955 (1993). Knowledge can rarely be proved directly but by a defendant's actions, declarations, or conduct from which an inference of knowledge may be drawn. *People v. Roberts*, 263 Ill. App. 3d 348, 352, 636 N.E.2d 86, 90 (1994).

■ Possession may be actual or constructive. Actual possession need not be demonstrated if constructive possession can be inferred. *Grames*, 254 Ill. App. 3d at 203, 625 N.E.2d at 955. Constructive possession exists where an intent and capability to maintain control and dominion over the substance exists. *Grames*, 254 Ill. App. 3d at 203, 625 N.E.2d at 955. Constructive possession may be inferred from the facts, but evidence establishing constructive possession is often entirely circumstantial. *People v. Minniweather*, 301 Ill. App. 3d 574, 580, 703 N.E.2d 912, 916 (1998).

■ Where narcotics are found on the premises rather than on a defendant, the State must prove the defendant "had control of the premises in order to permit the inference that the defendant had knowledge and control over the narcotics." *People v. Adams*, 242 Ill. App. 3d 830, 832, 610 N.E.2d 763, 765 (1993). The requirement that control of a premises be exclusive does not mean possession may not be joint. *Roberts*, 263 Ill. App. 3d at 353, 636 N.E.2d at 90.

■ Here, the cocaine was found in the top dresser drawer in a bedroom shared by an adult man and woman. The contents of that drawer also included several documents with defendant's name and address at 431 E. Grand as well as a digital scale and a 9-millimeter magazine with eight live rounds of ammunition. Jenkins testified defendant shared the house, bedroom, and dresser drawer with her and had lived there for a number of months, possibly a year. Defendant told police officers the digital scale and magazine were his. From this evidence the trier of fact could conclude defendant knowingly possessed the cocaine found in the dresser drawer.

Defendant argues, however, there is scant evidence he personally discharged a firearm. The State contends defendant is barred from asserting this argument on appeal as his trial counsel conceded this point in his opening statement and closing argument. In support of this argument, the State cites *R.B. Hayward Co. v. Lundoff-Bicknell Co.*, 365 Ill. 537, 541, 7 N.E.2d 289, 291 (1937) (which held a defendant is precluded from urging error on matters inconsistent with admissions in his pleadings or on theories different from those presented to the trial court), and *Houdek v. Ehrenberger*, 397 Ill. 62, 70, 72 N.E.2d 837, 841 (1947) (which held a fact admitted in the trial court cannot be contested on appeal).

Defense counsel's statements at trial were not evidence or facts. In his opening statement, counsel told the jury defendant would testify to shooting the gun at an animal that had entered the house through a hole in the attic and he thought firing a gun in the house was not an offense because he knows people who have firing ranges in their basements. But, defendant did not, however, testify.

In closing argument, defense counsel argued defendant's admission of ownership of the gun by claiming that telling Jenkins where it was and directing her to show the police bolstered the argument defendant did not know about the existence of the drugs in the house because it would make no sense for him to admit ownership of the gun and ownership of other items in the dresser drawer when there were also drugs located there.

A review of counsel's statements shows defendant did not admit firing the gun. Counsel's opening statement and final argument are not judicial admissions and do not preclude defendant from arguing on appeal the State failed to prove he discharged the firearm.

The State's evidence defendant fired the gun included statements attributed to defendant while in police custody, *i.e.*, Officer Lowhorn did not have any witnesses who saw him shoot because he was inside; lots of people have a range in their house; and he was under the impression it was permissible to shoot a gun on his own property. There was also evidence five spent .38-caliber shell casings were found in the yard of the house and three of the five had been fired by defendant's gun. The police had responded to a call of shots fired in the 400 block of E. Grand sometime after 11 a.m. on March 13, 2000.

■ None of this evidence proved defendant fired the gun either inside or outside the house on March 13. The presence of the shell casings does not prove the weapon was fired *at that location* nor does it tell *when* the shots were fired or by *whom*. The exact time of the call made to the police was not in the record. No witnesses presented at trial said they saw defendant shoot. His statements to police officers were not admissions he was shooting at that time.

There is a time nexus between the elements of the offense alleged. Defendant must possess and discharge his firearm *while* in possession of the cocaine. This term is a statutory term and, therefore, should be given its plain and ordinary meaning. See *In re E.B.*, 314 Ill. App. 3d 699, 704, 731 N.E.2d 1264, 1268 (2000). *While* means "as long as" and "during the time that." Merriam-Webster's Collegiate Dictionary 1342 (10th ed. 2000).

There was no proof defendant personally fired the gun. There was no proof he did so during the time that he was committing the felony of possession of a controlled substance. Defendant was not proved guilty of armed violence (personally discharging a firearm) beyond a reasonable doubt.

Defendant next argues the State failed to prove him guilty beyond a reasonable doubt of armed violence (armed with a firearm) as the evidence was insufficient to sustain a conviction. Again, we agree with defendant because of the holding in *People v. Smith*, 191 Ill. 2d 408, 413, 732 N.E.2d 513, 516 (2000).

We note defendant was not sentenced on this offense and no conviction was entered. The count for armed violence (armed with a firearm) was merged with the count of armed violence (personally discharging a firearm) for sentencing purposes. Rather than send this case back to the trial court for resentencing on this armed violence count (armed with a firearm) after vacating the conviction on the other count, we will address defendant's arguments now.

■ A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law. 720 ILCS 5/33A—2(a) (West 2000). A person is considered armed when he or she carries on or about his person or is otherwise armed with a Category I or Category II weapon. 720 ILCS 5/33A—1(c) (West 2000). A handgun is a Category I weapon. 720 ILCS 5/33A—1(c)(2) (West 2000). The defendant must be personally armed or have "some type of *immediate access to* or *timely control over* the weapon." (Emphasis in original.) *People v. Condon*, 148 Ill. 2d 96, 110, 592 N.E.2d 951, 958 (1992).

The armed violence statute is the legislature's response to the growing incidence of violent crime because the legislature recognized a felon with immediate access to a weapon was predisposed to use it when confronted with resistance, either from victims, law enforcement representatives, or other criminals. *Condon*, 148 Ill. 2d at 109, 592 N.E.2d at 957.

There is no question defendant owned the gun and had access and control over it. However, when he was arrested, he was unarmed and *outside* the house while the gun was unloaded and in a closet *inside* the house. Ammunition fitting the gun was not found with the gun. As previously noted, defendant was in possession of a controlled substance. The question becomes whether defendant possessed cocaine while (*i.e.*, during the time that) he was armed with the gun.

The State argues the determination of whether a defendant is armed, for purposes of the armed violence statute, is not made at the moment of arrest (*People v. Harre*, 155 Ill. 2d 392, 401, 614 N.E.2d 1235, 1240 (1993)) and, in the context of a drug transaction, the armed violence statute does not require the weapon and drugs be in the same place at the same time. *People v. Thomas*, 242 Ill. App. 3d 266, 276-77, 609 N.E.2d 1067, 1075 (1993). There are factual differences between *Harre* and *Thomas* and this case, however.

In *Harre* the defendant was arrested standing next to his open car window where a loaded gun lay on the front seat of the car and moments earlier he had been en route to a drug transaction with the gun easily accessible to him. *Harre*, 155 Ill. 2d at 400, 614 N.E.2d at 1239. In *Thomas*, two defendants were involved in the drug transaction in a parking lot. One defendant was in a car where the gun was while the

drugs were in a car several parking spaces away. The other defendant was in and around the car containing the gun and his accomplice obviously had access to it. Both defendants were found guilty of armed violence. *Thomas*, 242 Ill. App. 3d at 277, 609 N.E.2d at 1075.

The facts in the present case are more analogous to those in *Smith* and *People v. Shelato*, 228 Ill. App. 3d 622, 592 N.E.2d 585 (1992), where the defendants' armed violence convictions were reversed on appeal. In *Smith*, the defendant disposed of his weapon by dropping an unloaded gun out of the window of the house as police officers approached to arrest him. The supreme court concluded the facts did not support a guilty verdict for armed violence and relied on defendant's lack of propensity for violence and his relieving himself of his weapon on the approach of the police. The court found a conviction for armed violence under these circumstances would not serve the statute's purpose. *Smith*, 191 Ill. 2d at 412-13, 732 N.E.2d at 515.

In *Shelato*, the defendant had a loaded gun wrapped in a rag in a zipped duffle bag underneath 60 bags of cannabis. When the police officers arrived with a search warrant, defendant was talking on the telephone, across the room from the duffle bag. During the police search of the premises, defendant was told to sit on a couch near the location of the duffle bag on the floor. This court found the armed violence conviction could not stand because, to reach the gun, defendant would have to unzip the bag, dig underneath many bags of cannabis, and unwrap the gun from the rag, all under the watchful eye of police officers. *Shelato*, 228 Ill. App. 3d at 627-28, 592 N.E.2d at 589. If a weapon is not immediately accessible to the felon, the danger the statute seeks to curb is not present. *Shelato*, 228 Ill. App. 3d at 627, 592 N.E.2d at 589.

■ In this case it is true the gun was not immediately accessible to defendant. When he was arrested outside the house, the gun was in the house, in a closet and unloaded. The ammunition was not kept with the gun. Even if there were evidence defendant had been in the house minutes before his arrest, the gun was still not immediately accessible to him unless he were standing next to the open closet door and the gun were loaded. Under the facts of this case, the precedent of *Smith* suggests the danger the armed violence statute seeks to curb was not present and the evidence was not sufficient to support a conviction for armed violence (possession of a firearm).

Justice McMorrow's dissent in *Smith* (191 Ill. 2d at 419, 732 N.E.2d at 518-19) criticizes the majority decision because it, *sub silentio*, overrules *Harre*. We believe the criticism is justified. The reasoning in *Smith* rejects a core principle in *Harre*—*i.e.*, "the determination of whether a defendant is armed is not made at the moment of ar-

rest." *Harre*, 155 Ill. 2d at 401, 614 N.E.2d at 1240. Defendant Neylon was not armed when he was arrested outside the house, but at some earlier time he was in the house with the drugs and had some degree of access to the weapon. Whether that evidence would have been sufficient for a conviction under *Harre* is a question we need not answer. Instead, we are constrained to hold that if Smith, who the police saw drop his weapon out a window as they approached, is not guilty of armed violence, then a conviction of defendant in this case cannot stand. We believe the dissents in *Smith* are consistent with precedent and public policy, but we must adhere to the majority decision.

Defendant next contends the State failed to prove him guilty of either unlawful possession of cannabis with intent to deliver and unlawful possession of a controlled substance with intent to deliver. As we previously discussed, the evidence was sufficient to find defendant possessed a controlled substance, cocaine. The evidence regarding possession of cannabis is virtually identical. Defendant does not contest the testimony by the State's forensic scientist that the other substance found in his dresser drawer tested positive for cannabis. The cannabis was found in the same location as the cocaine, and the evidence was sufficient to support a finding defendant was also in possession of cannabis.

In an unlawful possession with intent to deliver contraband case, intent is a mental state seldom susceptible of direct proof but which must be inferred from circumstantial evidence. *People v. Burke*, 136 Ill. App. 3d 593, 600, 483 N.E.2d 674, 680 (1985).

"This issue involves the examination of the nature and quantity of circumstantial evidence necessary to support an inference of intent to deliver. In controlled substances prosecutions, many different factors are probative of intent to deliver. Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption, the high purity of the drug confiscated, the possession of weapons, the possession of large amounts of cash, the possession of police scanners, beepers or cellular telephones, the possession of drug paraphernalia, and the manner in which the substance is packaged. [Citation.] The quantity of controlled substance alone can be sufficient to prove an intent to deliver. This is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption." *People v. Beverly*, 278 Ill. App. 3d 794, 799, 663 N.E.2d 1061, 1065 (1996), citing *People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026-27 (1995).

In this case, one plastic bag found in the dresser drawer contained 12.8 grams of cocaine. The other plastic bag contained 13.6 grams of cannabis. Officer Root testified the amount of cocaine found

would provide 65 individual dosage units with a street value of $1,300 total. The cannabis could provide 25 to 60 dosage units depending on how it was smoked and would have a street value of $136.

Officer Root further stated the digital scale is of the type commonly used to weigh drugs for sale; this scale costs between $75 and $100. It is not the type of scale individual users would own or use because most prefer to spend their money on drugs. The postal scale would be used when small amounts of cocaine or cannabis are sold. The drug trade is a cash-and-carry business with a large profit margin and dealers frequently use guns for protection. Defendant had $770 in cash on him when he was arrested and admittedly owned a gun. Officer Root further noted no drug paraphernalia for individual consumption was found. The evidence is sufficient to find beyond a reasonable doubt defendant unlawfully possessed both the cocaine and the cannabis with the intent to deliver.

Defendant next argues he received ineffective assistance from his trial counsel when counsel failed to make an offer of proof to enter into evidence a written and notarized confession by Patricia Brooke that the drugs in the dresser drawer were hers because she had hidden them there when confronted by Cummings. Prior to trial, this written statement by Brooke had been provided to the State in discovery. Defense counsel then subpoenaed Brooke for trial. The trial court admonished Brooke outside the presence of the jury that she could be incriminating herself by testifying; she then asserted her fifth amendment right against self-incrimination and refused to testify.

Defense counsel told the trial court he had a written confession by Brooke that he wanted to use. The trial court asked him if it was not hearsay. Counsel replied it was, and the trial court then stated that was the end of the matter and the trial would move on.

Defendant raised this issue in his posttrial motion but included more information about the reliability of the statement. The trial court questioned why this information was not presented at trial in the form of an offer of proof. Defense counsel replied he was under the impression the trial court would not have entertained such an offer because of its comments concerning the statement being hearsay and its desire to move on with the trial. Defendant contends his counsel's failure to make an offer of proof deprived him of exonerating evidence at trial as he had enough evidence to support the reliability of the statement and to allow the admission of it into evidence.

● To establish ineffective assistance of counsel, a defendant must show (1) the conduct of defense counsel fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, a reasonable probability exists the outcome of the trial would

have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984). To establish ineffective assistance of counsel, a defendant must prove both prongs of the *Strickland* test. *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063, 1079 (1998). If it is easier to dispose of a claim for lack of sufficient prejudice accruing to defendant, that course should be taken. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

■ Defense counsel argued at the hearing on the posttrial motion he had evidence to support a finding of reliability as to the written statement by Brooke including: the fact Brooke made her statement to Jenkins right after Brooke became aware of the charges against defendant, it was a statement against penal interest, and it was corroborated by other evidence. The record does not contain what the offer of proof would actually have been. Without this evidence, we cannot determine whether defendant would have been permitted to have admitted the potentially exonerative evidence. When the appellate record does not permit such a determination to be made, this court has consistently found a defendant's claims of ineffective assistance are better served in the context of a postconviction petition where a complete record can be made. See *People v. Holloman*, 304 Ill. App. 3d 177, 186-87, 709 N.E.2d 969, 975 (1999); *People v. Kunze*, 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296 (1990).

■ Finally, defendant contends the trial court abused its discretion in sentencing him to a 20-year prison term for his armed violence (personally discharging a firearm) conviction. As we have reversed his conviction for armed violence (personally discharging a firearm), we need not discuss defendant's arguments regarding his sentence. We also need not address defendant's arguments regarding the constitutionality of the armed violence statute because we have concluded the State did not prove either charge of armed violence.

For the foregoing reasons, we reverse defendant's convictions for armed violence (personally discharging a firearm) and armed violence (possession of a firearm), affirm his convictions and sentences for unlawful possession of cannabis with intent to deliver and unlawful possession of a controlled substance with intent to deliver, and remand for issuance of an amended judgment of sentence.

Affirmed in part and reversed in part; cause remanded with directions.

STEIGMANN, J., concurs.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I would affirm the trial court in full. The jury found defendant guilty of armed violence (personally discharging a firearm) and armed violence (armed with a firearm) beyond a reasonable doubt. The evidence, viewed in the light most favorable to the prosecution, was sufficient to prove beyond a reasonable doubt that defendant was guilty of those charges and, therefore, sufficient to sustain those convictions.

For these reasons, I would affirm.