# Illinois Official Reports

## Appellate Court

---

### *People v. Norwood*, 2018 IL App (4th) 150883

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRANCE T. NORWOOD, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0883 |
| Filed | May 9, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 14-CF-1454; the Hon. Thomas E. Griffith Jr., Judge, presiding. |
| Judgment | Affirmed as modified.<br>Cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Daaron V. Kimmel, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE TURNER delivered the judgment of the court, with opinion.<br>Justices Knecht and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1     On August 20, 2015, after a bench trial, the trial court found defendant guilty of two counts of armed violence. In October 2015, the court sentenced defendant to concurrent 16-year prison sentences. Defendant appeals, arguing the court erred in finding him guilty of armed violence because the State did not establish beyond a reasonable doubt that the rifle found in his bedroom was immediately accessible to him when the police entered his bedroom. He also argues the circuit clerk erred in imposing fines on him. We affirm defendant's armed violence convictions but remand this case for the trial court to vacate the fines improperly imposed by the circuit clerk.

¶ 2                                    I. BACKGROUND

¶ 3     On November 21, 2014, the State charged defendant by information with two counts of armed violence (720 ILCS 5/33A-2(a), 33A-3(a) (West 2014)). Count I alleged defendant unlawfully possessed with the intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine while armed with a rifle, a Category I weapon. Count II alleged defendant was armed with the same rifle while unlawfully possessing with the intent to deliver more than 30 grams but less than 500 grams of a substance containing cannabis. Count II was later amended to delete the intent to deliver language. The State also charged defendant with unlawful possession of a controlled substance (more than 1 gram but less than 15 grams of a substance containing cocaine) while within 1000 feet of church property with intent to deliver with a prior unlawful possession of controlled substance with intent to deliver conviction (720 ILCS 570/407(b)(1) (West 2014)) (count III) and unlawful possession of cannabis (more than 30 grams but not more than 500 grams) with a prior unlawful possession of controlled substance with intent to deliver conviction (720 ILCS 550/4(d) (West 2014)) (count IV). Before his bench trial in July 2015, as part of a partial guilty plea with regard to count III and a full guilty plea with regard to count IV, defendant admitted he unlawfully possessed 1 gram or more but less than 15 grams of a substance containing cocaine with the intent to deliver and unlawfully possessed more than 30 grams but not more than 500 grams of a substance containing cannabis. As a result, with regard to the armed violence convictions, the only real issue was whether the State established beyond a reasonable doubt defendant was armed or had immediate access to the rifle found in his bedroom.

¶ 4     Detective Adam Walter of the Macon County Sheriff's Department, who was also the team leader for the county's special response team (SRT), testified he assisted Detective Brian Hickey in executing a search warrant at 1644 East Hickory Street in Decatur on November 18, 2014. After entering the residence, Walter immediately went through the house to the southwest bedroom, which the police had determined was defendant's bedroom. Walter estimated it took 10 seconds for him to reach the bedroom door, which was closed. When he opened the bedroom door, defendant was standing naked with his hands up in the air at the foot of the bed near the door. Walter ordered defendant to get on the ground. Defendant laid on the bed. Because defendant was very cooperative, Walter retrieved some pants, which defendant put on. Walter secured defendant with handcuffs in front of his waist. Walter did not see a gun in the bedroom or in defendant's possession.

¶ 5        Sergeant Toby Williams of the Decatur Police Department testified he also assisted in executing the search warrant. He found a loaded assault rifle in the far left corner of defendant's bedroom behind a storage container at the furthest point from the bedroom door.

¶ 6        Detective Brian Hickey of the Macon County Sheriff's Department testified he entered the residence at 6:55 a.m. after it was secure. He did not see where the gun or defendant was located in the bedroom when Walter opened the bedroom door. Hickey testified Walter advised him defendant was within three feet of the rifle when he placed him under arrest. Defendant advised Hickey the rifle was for home and self-protection.

¶ 7        Tykisha Lofton testified that she and defendant, her fiancé, lived together and slept in the southwest bedroom where the police found defendant. When the search occurred, their bed was in the middle of the bedroom, pushed up against the window. They slept with their heads toward the door. She did not know the rifle was in the corner of the room because a stuffed heart toy on top of the plastic case blocked her view. The rifle was 10 feet from the end of the bed. Lofton testified that defendant slept on the side opposite the rifle. However, she told the police defendant slept on the side of the bed nearest the rifle.

¶ 8        Defendant recalled Detective Walter as a witness. He testified he never told Detective Hickey that defendant was three feet from the far corner of the room where the gun was later found when Walter entered the bedroom. According to Walter, defendant was toward the middle of the end of the bed near the door. However, Walter was not asked whether defendant was within three feet of the rifle when defendant laid on the bed instead of the floor.

¶ 9        The trial court found defendant guilty of both counts of armed violence (counts I and II). In ruling on the armed violence counts, the court stated:

> "The standard is immediately accessible. Here are the factors this Court deemed to be significant[.] First of all, it was a very large gun in the corner of the bedroom. The butt of the gun was sticking up just above what looks to be like a type of desk or stool. It is not a situation where it is a small gun buried under a stack of clothes or a situation where the defendant would have to dig through items to have access to the gun.
>
> This Court also believes that at the time of entry, and the phrase in *Cervantes* is, [']when the police enter,['] and this is per Ms. Lofton's testimony, that the defendant had been asleep. She told the police that he slept on that side of the bed. He told the police, or the defendant told the police, it was his gun, and he used it for protection purposes. And he had been asleep right beside that gun at the time the police entered the residence. When Detective Walters entered the bedroom, Mrs. Root, you make a good argument, the defendant is at the end of the bed. He is standing up. His arms are up. But, again, he could easily jump across that bed and grab that gun. That gun is still immediately accessible at that point in time. And it is just a case where, in terms of, I simply cannot throw common sense out the window. Common sense to this Court dictates that that gun was immediately accessible to the defendant."

¶ 10       On September 17, 2015, defendant filed a posttrial motion, arguing the trial court erred in finding him guilty of armed violence because the weapon in question was not immediately accessible to him at the time of his encounter with the police.

¶ 11       On October 14, 2015, the trial court denied defendant's posttrial motion and sentenced defendant to concurrent 16-year prison sentences for defendant's two armed violence convictions.

¶ 12    This appeal followed.

¶ 13                              II. ANALYSIS
¶ 14                            A. Armed Violence
¶ 15    We first address defendant's argument regarding his armed violence convictions. Section 33A-2(a)(1) of the Criminal Code of 2012 (720 ILCS 5/33A-2(a) (West 2014)) states: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except [certain excluded offenses]." According to the statute, a person is considered "armed with a dangerous weapon" when "he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A-1(c)(1) (West 2014). Our supreme court has interpreted the meaning of "otherwise armed" as follows:

> "A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. [Citation.] Without a weapon at hand, the felon is not faced with such a deadly decision. Hence, we have the deterrent purpose of the armed violence statute. Thus, for this purpose to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphases in original.) *People v. Condon*, 148 Ill. 2d 96, 109-10, 592 N.E.2d 951, 958 (1992).

¶ 16    Although defendant was found in a bedroom with a loaded rifle, he argues the trial court erred in finding he was guilty of armed violence because the rifle was not immediately accessible to him at the moment the police entered his bedroom because he was 10 feet from the rifle, and it was blocked by the bed. Defendant argues the trial court erred by considering whether the rifle was immediately accessible to defendant when the police entered the residence prior to seeing defendant.

¶ 17    Defendant cites this court's opinion in *People v. Neylon*, 327 Ill. App. 3d 300, 762 N.E.2d 1127 (2002), as authority for the proposition that the trial court cannot look back in time before the police officer encountered defendant to determine if a weapon was immediately accessible. Before discussing this court's decision in *Neylon*, a brief review of our supreme court's prior decisions on this issue is necessary.

¶ 18    In *Condon*, the police executed a search warrant at the defendant's home. Defendant was in the kitchen. Firearms were found in the house but none were found in the kitchen or on defendant's person. *Condon*, 148 Ill. 2d at 110. According to the supreme court, the defendant could not have used the guns as they were too far removed from his location in the kitchen. *Condon*, 148 Ill. 2d at 110. The court noted "[t]he intended purpose of the armed violence statute is to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the felony victim resists. [Citation.] That deterrent purpose is not served *under the circumstances of this case*." (Emphasis added.) *Condon*, 148 Ill. 2d at 109. The supreme court noted:

> "Were we to find the presence of guns in the house with the cocaine enough to violate the armed violence statute, such a finding would be contrary to the purpose for which the statute was enacted. Rather, we find that defendant would have had to carry a weapon on his person or alternatively to have had 'immediate access to' or 'timely

control over' a weapon *when the police entered* to have been 'otherwise armed' for purposes of the statute." (Emphasis added.) *Condon*, 148 Ill. 2d at 110.

¶ 19    In *People v. Harre*, 155 Ill. 2d 392, 394, 614 N.E.2d 1235, 1236-37 (1993), after executing a search warrant on an isolated home in the country, seizing over 20,000 grams of cannabis, and arresting two of the home's occupants, police officers maintained a watch outside the home for defendant and his cousin, who the police learned were expected to be returning to the house.

¶ 20    The driveway to the house was approximately 500 feet long and was gated halfway to the house. At approximately 1:25 a.m., two officers saw a car rapidly approaching the gate. The car stopped at the gate. The officers then heard a car door open and close and the gate being opened. The car then continued up the driveway. *Harre*, 155 Ill. 2d at 394.

> "As the car approached the house, defendant was observed riding on the passenger-side hood of the car, with his legs dangling between the passenger door and the wheel well. Defendant jumped down off the hood and took two steps towards the rear of the car until he was next to the slightly more than half-opened window of the passenger-side door. An officer, with weapon drawn, then identified himself and instructed defendant to return to the hood of the car and place his hands there." *Harre*, 155 Ill. 2d at 394-95.

On the front seat of the vehicle, the police found a .22-caliber pistol and a .22-caliber rifle. *Harre*, 155 Ill. 2d at 395. The police also seized two garbage bags of cannabis from the car. *Harre*, 155 Ill. 2d at 395.

¶ 21    Defendant was found guilty of armed violence. The supreme court noted "[t]he jury's factual determination that defendant was armed was supported by the testimony of two officers that the weapons on the front seat of the car were within defendant's immediate reach as defendant stood next to the car door and partially opened car window." *Harre*, 155 Ill. 2d at 396. However, the appellate court found defendant could not have reached the firearms. *Harre*, 155 Ill. 2d at 396. Our supreme court found the appellate court erred in substituting its judgment for that of the jurors.

¶ 22    The supreme court distinguished the situation in *Harre* from *Condon*. In *Condon*, the State had no evidence the defendant displayed or showed a gun during any drug delivery. *Harre*, 155 Ill. 2d at 400 (citing *Condon*, 148 Ill. 2d at 110). The court stated:

> "[T]he evidence here, although circumstantial, clearly supported the inference that defendant had *moments before his apprehension been riding in the car on his way to a drug delivery with a weapon inches from his grasp.* Such circumstantial evidence was not so clearly unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found beyond a reasonable doubt that defendant had immediate access to or timely control over such weapons while riding in the car enroute to the delivery of the cannabis. [Citation.] Thus again in contrast to *Condon*, the evidence supported the jury's finding that defendant had immediate access to and control over the weapons during the course of the underlying felony.
>
> Finally, defendant had taken two steps toward the car door and was parallel to it when stopped by the officer's announcement. *Thus, defendant was moving towards his weapons and was only a moment from opening the car door, which would have removed any possible remaining obstruction to defendant's unfettered access to and unrestricted control over such weapons.* Defendant argues that because he did not

foolishly attempt to open the door or reach through the window in face of the officer's drawn weapon, he was not guilty of armed violence. *However, the determination of whether a defendant is armed is not made at the moment of arrest.* Rather, armed violence occurs if a defendant commits a felony while having on or *about* his person a dangerous weapon or if a defendant is *otherwise* armed. We would completely eviscerate the deterrent purpose of the armed violence statute if we were to require police officers to wait to announce their presence and effect an arrest until a defendant's access and control over a readily available weapon had ripened into the temptation to take actual physical possession, which would invite rather than deter violence." (Emphases in original and added.) Harre, 155 Ill. 2d at 400-01.

In *Harre*, the supreme court made clear the time frame to be looked at in determining whether a defendant had immediate access to a weapon was not simply the moment a police officer actually encountered a defendant. However, the supreme court did not specify the scope of time to be considered.

¶ 23    In *People v. Smith*, 191 Ill. 2d 408, 732 N.E.2d 513 (2000), the defendant dropped a handgun out of his apartment window *while police officers were approaching his apartment building to execute a search warrant on his apartment*. The police officers saw defendant drop the gun out of the window. The gun landed on the roof of the building's porch and slid off the roof to the ground. *Smith*, 191 Ill. 2d at 410. Based on these facts, defendant was not in a ground-floor apartment. After entering the defendant's apartment, the police found cocaine and cannabis in the apartment's living room. They found the defendant in a bedroom near a window. *Smith*, 191 Ill. 2d at 410. The trial court found defendant guilty of armed violence. *Smith*, 191 Ill. 2d at 410.

¶ 24    The supreme court reversed the conviction after analyzing its prior opinions in *Condon* and *Harre*. According to the majority opinion, the court found the deterrent purpose of the statute was not served in *Condon* based on the facts in that case.

"As in the instant case, the police in *Condon* executed a search warrant to seize illegal drugs located in the defendant's residence. *When police entered the residence*, Condon was standing in the apartment with no weapon on or about his person. Although numerous guns were found elsewhere in the residence, we held that Condon's conviction for armed violence could not be sustained because he did not have ' "immediate access to" or "timely control over" a weapon when the police entered.' " (Emphasis added.) *Smith*, 191 Ill. 2d at 412 (quoting *Condon*, 148 Ill. 2d at 110).

The majority then distinguished the situation in *Harre* from the situation in *Condon*. According to the court:

"[I]n [*Harre*], we affirmed the armed violence conviction of a defendant who was apprehended by police during a drug raid as he made a move toward his car, which contained two guns. In our opinion in *Harre*, we noted that at the time police confronted the defendant in *Condon*, Condon did not have the 'intent and capability to maintain control and posesion' of the weapons, while Harre clearly did." *Smith*, 191 Ill. 2d at 412 (quoting *Harre*, 155 Ill. 2d at 399).

Applying the reasoning from *Condon* and *Harre* to the facts before it, the majority concluded the defendant did not commit the offense of armed violence, stating:

"Defendant did not have ' "immediate access to" or "timely control over" a weapon *when the police entered*' (*Condon*, 148 Ill. 2d at 110), because he dropped the gun out of the window as soon as he became aware that police were approaching. For this same reason, defendant also did not have the 'intent and capability to maintain control and possession' of the weapon, as this court has required. *Harre*, 155 Ill. 2d at 399-401. Permitting an armed violence conviction to stand against a felon such as defendant, who exhibited no propensity to violence and dropped the unloaded gun out of the window as the police approached his apartment to search for drugs, would not serve, but rather would frustrate, the statute's purpose of deterring criminals from involving themselves and others in potentially deadly situations." (Emphasis added.) *Smith*, 191 Ill. 2d at 412-13.

¶ 25    Justice McMorrow filed a partial concurrence and partial dissent in *Smith*, which was joined by two other justices. Justice McMorrow wrote that the majority's opinion overruled, *sub silentio*, the supreme court's decision in *Harre*. *Smith*, 191 Ill. 2d at 419 (McMorrow, J., concurring in part and dissenting in part, joined by Miller and Freeman, JJ.). After summarizing the facts in *Harre*, Justice McMorrow stated:

"This court in *Harre* determined that the defendant was guilty of armed violence. This result was based on two conclusions. First, the evidence showed that the defendant was 'armed,' for purposes of the armed violence statute, based on the police officers' lay opinion testimony that the weapons on the front seat of the car were within the defendant's immediate reach as the defendant stood next to the car door and partially opened car window. Second, and more important for purposes of this case, the court determined that the defendant was guilty of armed violence because '*the determination of whether a defendant is armed is not made at the moment of arrest*.' (Emphasis added.) [Citation.] \*\*\*

The majority errs, in the instant case, when it emphasizes the fact that the defendant was not armed at the time of his arrest. As *Harre*, which postdates *Condon*, makes absolutely clear, the only question that must be answered under the armed violence statute is whether the defendant was armed at the time of the commission of the felony. In the case at bar, the police officer's testimony that he saw the defendant throwing the gun out of the window clearly established that the defendant was armed during the commission of the possession offense. As in *Harre*, the defendant in this case had, 'moments before his apprehension,' been armed with a handgun and in possession of a controlled substance. The majority's decision is thus at odds with, and indeed overrules, *Harre*." *Smith*, 191 Ill. 2d at 419-20 (McMorrow, J., concurring in part and dissenting in part, joined by Miller and Freeman, JJ.).

¶ 26    We do not agree that the majority opinion overruled, *sub silentio*, the supreme court's decision in *Harre* as stated by Justice McMorrow in her partial dissent and partial concurrence. It is first important to note Justice McMorrow's partial dissent is based in large part on the faulty premise that the majority in *Smith* held the moment of a defendant's arrest was the only relevant moment in determining whether a defendant could be guilty of armed violence. This is incorrect. The majority's focus was on the time the police entered the defendant's apartment to execute the search warrant, not the moment the defendant was arrested. This was the standard stated by the supreme court in *Condon*.

¶ 27    From our review of *Condon* and *Harre*, *Harre* did not broaden the time frame to be considered with regard to a defendant inside a home during the execution of a search warrant. The language from *Harre* relied upon by Justice McMorrow was in response to Harre's argument that he was not guilty of armed violence "because he did not foolishly attempt to open the door or reach through the window in face of the officer's drawn weapon." It appears the supreme court in *Harre* was simply restating its prior holding in *Condon* in the context of a street encounter by police officers.

¶ 28    Finally, the majority in *Smith* did not overrule, *sub silentio*, *Harre* unless *Harre* overruled, *sub silentio*, *Condon*. From our review of these cases, neither of these things happened. The majority in *Smith* simply relied on the analysis the supreme court applied in *Condon*, which, like *Smith*, involved a defendant inside a house during the execution of a search warrant. Based on the supreme court's analysis in *Condon*, the defendant in *Smith* could not have been guilty of armed violence because the defendant did not have immediate access to a weapon either when the police entered his apartment or at any point while the police were in the apartment.

¶ 29    This brings us back to defendant's reliance on this court's decision in *Neylon*. In *Neylon*, the defendant was arrested outside his house after the police received a "shots fired" report. *Neylon*, 327 Ill. App. 3d at 303. After defendant's arrest, the police found a .38-caliber pistol inside the house in a bedroom closet. *Neylon*, 327 Ill. App. 3d at 303. The defendant argued his armed violence (armed with a firearm) conviction should be reversed because the State did not prove him guilty beyond a reasonable doubt. Pursuant to *Condon*, this court noted that a defendant must be personally armed or have immediate access to or timely control over a weapon. *Neylon*, 327 Ill. App. 3d at 308 (citing *Condon*, 148 Ill. 2d at 110). *Neylon* does not reflect the State presented any evidence about when the defendant was last personally armed or had immediate access to the weapon found in the house.

¶ 30    This court also distinguished the facts in *Neylon* from the situation in *Harre* because of the defendant's accessibility to the weapon in *Harre* both at the moment he encountered the police and in the moments leading up to the encounter. According to this court's analysis in *Neylon:*

> "In this case it is true the gun was not immediately accessible to defendant. When he was arrested outside the house, the gun was in the house, in a closet and unloaded. The ammunition was not kept with the gun. Even if there were evidence defendant had been in the house minutes before his arrest, the gun was still not immediately accessible to him unless he were standing next to the open closet door and the gun were loaded. Under the facts of this case, the precedent of *Smith* suggests the danger the armed violence statute seeks to curb was not present and the evidence was not sufficient to support a conviction for armed violence (possession of a firearm)." *Neylon*, 327 Ill. App. 3d at 309.

We note *Condon* required this same result.

¶ 31    This court's analysis reversing the defendant's armed violence conviction could have ended at that point. However, the majority went on to address Justice McMorrow's partial concurrence and partial dissent in *Smith*, stating it agreed with Justice McMorrow's criticism that the majority decision in that case overruled, *sub silentio*, *Harre*'s holding that the court is not limited to looking at the moment of arrest to determine whether a defendant is armed. *Neylon*, 327 Ill. App. 3d at 309-10. Considering the factual situation in *Neylon* did not involve the execution of a search warrant, the justices in the majority in *Neylon* had no reason to analyze whether Justice McMorrow's bold assertion in her partial concurrence and partial

dissent, which was joined by Justice Miller and Justice Freeman, was accurate. However, the facts and arguments in this case require this court to further analyze Justice McMorrow's reasoning and this court's assessment of her criticism.

¶ 32    As explained earlier, Justice McMorrow's analysis was based on a false premise because the majority in *Smith* did not hold that a court should only look at the moment of arrest to determine whether a defendant is armed. Instead, *Smith* merely followed the precedent established in *Condon* that it could look back to the moment the police entered the residence while executing the search warrant, not just the moment the police physically encountered or arrested the defendant.

¶ 33    In this case, like *Condon* and *Smith*, the police were executing a search warrant on defendant's home. Contrary to defendant's suggestion, the question before this court is not whether the rifle was immediately accessible to defendant when the police officer opened the bedroom door. Instead, the question is whether the State established beyond a reasonable doubt that the rifle was immediately accessible to defendant after the police entered his home.

¶ 34    This court will not reverse the trial court's determination that defendant was guilty of armed violence unless the evidence, when "viewed in a light most favorable to the State, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *Harre*, 155 Ill. 2d at 397-98. Based on the evidence in this case, the trial court did not err in finding defendant guilty of armed violence.

¶ 35    The evidence supports a reasonable inference the rifle in the bedroom was immediately accessible to defendant during the period between the police officers entering the home and opening the bedroom door. Lofton told the police defendant slept on the same side of the bed as the rifle. He was still in bed when Lofton got up that morning to let their dog out. When Walter opened the door to the bedroom, defendant was standing naked with his hands up in the air. Based on this evidence, the trial court could have reasonably inferred defendant heard the police entering the house and got up from the bed in a manner making the rifle immediately accessible. Further, after Walter opened the bedroom door and ordered defendant to get on the ground, defendant instead laid down on the bed, decreasing the distance between the rifle and defendant. Defendant did not tell Walter anything about the rifle in the bedroom.

¶ 36    We will not substitute our judgment for that of the trier of fact, and we will not reverse a trial court's judgment if any rational trier of fact could have reached the conclusion below, considering all of the evidence in the light most favorable to the prosecution. *Harre*, 155 Ill. 2d at 398. As a result, we affirm the trial court's determination the State proved defendant guilty of armed violence beyond a reasonable doubt.

¶ 37                                                    B. Fines

¶ 38    We next address defendant's argument that the circuit clerk improperly imposed several fines on defendant. Defendant argues these fines should be vacated. Citing *People v. Daily*, 2016 IL App (4th) 150588, ¶ 30, 74 N.E.3d 15, the State concedes the following circuit clerk imposed fines should be vacated: $15 state police operations assessment (*People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31, 979 N.E.2d 1030); $5 drug court assessment, which includes the $0.25 "Clerk Op Deduction" (*People v. Carter*, 2016 IL App (3d) 140196, ¶ 52, 62 N.E.3d 267); $50 court finance assessment (*People v. Smith*, 2014 IL App (4th) 121118, ¶ 54, 18 N.E.3d 912); $5 youth diversion assessment (*People v. Jernigan*, 2014 IL App (4th) 130524, ¶ 45, 23 N.E.3d 650); $30 child advocacy assessment, which includes $1.50 of the $12 "Clerk

- 9 -

Op Add-Ons" (*People v. Jones*, 397 Ill. App. 3d 651, 660, 921 N.E.2d 768, 775 (2009)); $10 for "Nonstandard" assessment, which includes $0.50 of the $12 "Clerk Op Add-Ons" (*People v. Williams*, 2013 IL App (4th) 120313, ¶ 19, 991 N.E.2d 914); $10 medical assessment (*People v. LaRue*, 2014 IL App (4th) 120595, ¶ 57, 10 N.E.3d 959); $10 anti-crime assessment (*Jernigan*, 2014 IL App (4th) 130524, ¶ 48); $160 lump-sum surcharge (*People v. Warren*, 2016 IL App (4th) 120721-B, ¶¶ 129, 131, 55 N.E.3d 117); $100 violent crime victims assistance assessment (*Warren*, 2016 IL App (4th) 120721-B, ¶ 142); $30 juvenile records expungement assessment (total of $10 of the $12 "Clerk Op Add-Ons", $10 of the $70 state's attorney assessment, and $10 state police services assessment) (*Carter*, 2016 IL App (3d) 140196, ¶¶ 53-54); and $15 Court Appointed Special Advocates assessment (55 ILCS 5/5-1101(f-10) (West 2014)). We accept the State's concession.

¶ 39                                    III. CONCLUSION

¶ 40       For the reasons stated, we affirm defendant's convictions but remand with directions for the trial court to vacate the fines improperly imposed by the circuit clerk. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2016).

¶ 41       Affirmed as modified.

¶ 42       Cause remanded with directions.